# In the United States Court of Federal Claims

### No. 25-565C
### Filed: January 29, 2026

```
* * * * * * * * * * * * * * * * * *
                                    *
  BIANCA M. SANCHEZ,                *
                                    *
                  Plaintiff,        *
                                    *
  v.                                *
                                    *
  UNITED STATES,                    *
                                    *
                  Defendant.        *
                                    *
                                    *
* * * * * * * * * * * * * * * * * *
```

**Pheobe A. Clark**, Wukela Law Firm, Florence, SC, for plaintiff.

**Kelly E. Palamar**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington DC, for defendant. With her were **Albert S. Iarossi**, Assistant Director, Commercial Litigation Branch; **Patricia M. McCarthy**, Director, Commercial Litigation Branch; and **Brett A. Shumate**, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, DC. **Darrel Waugh**, Assistant General Counsel, Federal Bureau of Prisons.

# O P I N I O N

## HORN, J.

On March 31, 2025, plaintiff Bianca M. Sanchez filed a complaint in the United States Court of Federal Claims alleging two causes of action, count one "Breach of Contract" and count two "Quantum Meruit/Unjust Enrichment," as a result of an alleged failure by the Federal Bureau of Prisons (BOP) to perform its obligations under an alleged 2018 Student Loan Repayment Agreement which plaintiff signed. On June 16, 2025, defendant filed a motion to dismiss plaintiff's complaint. Defendant argues that count one of plaintiff's complaint for "Breach of Contract" should be dismissed pursuant to Rule 12(b)(6) (2024) of the Rules of the United States Court of Federal Claims (RCFC) for failure to state a claim upon which relief can be granted because, as further discussed below, "the Student Loan Repayment Agreement that Ms. Sanchez signed on April 18, 2018 was never signed or approved by either the [BOP's] Regional Director or the BOP's Personnel Director, and thus did not constitute a binding contract." (alteration added; internal citations omitted). Defendant further argues that count two of plaintiff's complaint for "Quantum Meruit/Unjust Enrichment" must be dismissed pursuant to RCFC 12(b)(1)

for lack of subject matter jurisdiction. Defendant's motion to dismiss has been fully briefed and oral argument was held.

# FINDINGS OF FACT

The context in which plaintiff's case arose is that the BOP established a Student Loan Repayment Program pursuant to 5 U.S.C. § 5379 (2024) which states, "[t]he head of an agency may, in order to recruit or retain highly qualified personnel, establish a program under which the agency may agree to repay (by direct payments on behalf of the employee) any student loan previously taken out by such employee." 5 U.S.C. § 5379(b)(1) (alteration added). An implementing regulation reflects that the statute at 5 U.S.C. § 5379 "authorizes agencies to establish a student loan repayment program for the purpose of recruiting or retaining highly qualified personnel." 5 C.F.R. § 537.101 (2024). The statute at 5 U.S.C. § 5379(b)(2) provides:

> Payments under this section [titled "Student loan repayments"] shall be made subject to such terms, limitations, or conditions as may be mutually agreed to by the agency and employee concerned, except that the amount paid by an agency under this section may not exceed—
>
> (A) $10,000 for any employee in any calendar year; or
>
> (B) a total of $60,000 in the case of any employee.

5 U.S.C. § 5379(b)(2) (alteration added). An employee selected to receive benefits under a student loan repayment program "must agree in writing, before receiving any such benefit, that the employee will— (A) remain in the service of the agency for a period specified in the agreement (not less than 3 years), unless involuntarily separated[.]" 5 U.S.C. § 5379(c)(1) (alteration added). The statute at 5 U.S.C. § 5379(f) also requires that benefits under a student loan repayment program "shall be in addition to basic pay and any other form of compensation otherwise payable to the employee involved." 5 U.S.C. § 5379(f).

In the appendix filed with defendant's motion to dismiss, defendant submitted BOP Program Statement 3530.02 (2016) (hereinafter Program Statement 3530.02), an internal BOP document, which offered guidance for the implementation of the BOP's Student Loan Repayment Program. According to Program Statement 3530.02, under the BOP's Student Loan Repayment Program, the BOP may agree to repay all or part of a current employee's outstanding student loans in the amount of "up to $10,000 per year (up to a maximum loan repayment of $30,000 for three years), and may not be prorated should the service agreement be unfulfilled." Program Statement 3530.02 states that "[b]efore a student loan repayment may be paid, the candidate or employee must sign a Student Loan Repayment Agreement (Attachment C-14) to complete a minimum of 36 months of employment with DOJ, beginning on the date of the first repayment." (alteration added). Additionally, Program Statement 3530.02 states that "[a]n employee who fails to complete at least 36 months of DOJ service as the initial Repayment Agreement established or 12 months of DOJ service under a supplemental Repayment Agreement is indebted to the

Federal Government and must repay all student loan repayments received under the relevant agreement." (alteration added). Moreover, Program Statement 3530.02 states that student loan repayments "[a]re not considered part of the employee's rate of basic pay for any other purpose." (alteration added). According to Program Statement 3530.02, approval for BOP Student Loan Repayment Agreements begins with the Chief Executive Officer of the BOP institution requesting "each student loan repayment in writing through the Regional Director," followed by the Regional Director's approval or disapproval of the request, and, if approved by the Regional Director, concluding with the forwarding of the request "to the Staffing and Employee Relations section (SERS) for routing to the Bureau Personnel Director, and the Assistant Director over the discipline involved" for final approval.

According to plaintiff's complaint, plaintiff began working at the BOP in Bennettsville, South Carolina on January 22, 2017. Plaintiff alleges that the BOP offered plaintiff an opportunity to participate in the Student Loan Repayment Program in 2018 in exchange for remaining in the service of the agency for three years. Plaintiff claims that a BOP Human Resources Specialist, Ms. Beth Graham, offered plaintiff a Student Loan Repayment Agreement via email on April 17, 2018, which plaintiff signed on April 18, 2018. (hereinafter the alleged April 2018 Student Loan Repayment Agreement). The alleged April 2018 Student Loan Repayment Agreement stated: "In consideration of the repayment of my outstanding Federally-insured student loan balance as described below, I Bianca M. Sanchez agree to remain in the service of the Bureau of Prisons for a period of 36 months, <u>beginning on the date that the repayment is made</u>." (emphasis added). The alleged April 2018 Student Loan Repayment Agreement signed by plaintiff also stipulated that the "loan repayment schedule will be as follows: the Bureau of Prisons will repay $30,000.00 in outstanding Federally-insured student loans directly to FedLoan Servicing in one repayment of $10,000 in calendar year 2018, one repayment of $10,000 in calendar year 2019, and one repayment of $10,000 in calendar year 2020." Plaintiff alleges in her complaint, however, that she believed that her 36-month work obligation began upon her signing the alleged April 2018 Student Loan Repayment Agreement. It appears from the record before the court that in 2018, after plaintiff signed the alleged April 2018 Student Loan Repayment Agreement, a government official with authority to enter into the alleged April 2018 Student Loan Repayment Agreement, for reasons not identified in the record currently before the court, did not sign the alleged April 2018 Student Loan Repayment Agreement. In her complaint, plaintiff alleges that the defendant failed to properly process and sign the paperwork after Ms. Sanchez signed the alleged 2018 Student Loan Repayment Agreement on April 18, 2018.

Thereafter, defendant sent plaintiff a second Student Loan Repayment Agreement to sign for participation in the BOP's Student Loan Repayment Program in exchange for remaining in the service of the agency for three years, which plaintiff signed on January 4, 2019. (hereinafter the January 2019 Student Loan Repayment Agreement). The January 2019 Student Loan Repayment Agreement sent to plaintiff again stated: "In consideration of the repayment of my outstanding Federally-insured student loan balance as described below, I Bianca M. Sanchez agree to remain in the service of the Bureau of Prisons for a period of 36 months, <u>beginning on the date that the repayment is made</u>."

3

(emphasis added). The January 2019 Student Loan Repayment Agreement however, which listed different dates for repayment, stipulated that the "loan repayment schedule will be as follows: the Bureau of Prisons will repay $30,000.00 in outstanding Federally-insured student loans directly to FedLoan Servicing in one repayment of $10,000 in calendar year 2019, one repayment of $10,000 in calendar year 2020, and one repayment of $10,000 in calendar year 2021." The three repayment dates listed in the January 2019 Student Loan Repayment Agreement were in 2019, 2020, and 2021, rather than 2018, 2019, and 2020, which were the repayment dates listed in the alleged April 2018 Student Loan Repayment Agreement. Both the alleged April 2018 Student Loan Repayment Agreement and the January 2019 Student Loan Repayment Agreement stated that plaintiff agreed to reimburse the government for any repaid amounts if plaintiff voluntarily departed from the BOP prior to completing the required 36-month service period beginning on the date that the repayment is made. In accordance with the January 2019 Student Loan Repayment Agreement, the BOP made a $10,000.00 payment on plaintiff's behalf on June 9, 2019 and defendant argues that plaintiff's required 36-month service period began to run on June 9, 2019; the date defendant made its first repayment on behalf of plaintiff. The BOP made a second $10,000.00 payment on July 19, 2020, and a third $10,000.00 payment on June 6, 2021. The government did not make, and plaintiff was not the recipient of, any repayment in 2018.

Resolution of the dispute currently before the court in the above captioned case depends on whether the alleged April 2018 Student Loan Repayment Agreement was a valid contract between plaintiff and defendant and whether the alleged April 2018 Student Loan Repayment Agreement was entered into by a government official with actual authority to bind the United States to a contract. The court, therefore, addresses the various signatures appearing on the alleged April 2018 Student Loan Repayment Agreement, the January 2019 Student Loan Repayment Agreement, and two related human resources documents in the record before the court. The copy of the alleged April 2018 Student Loan Repayment Agreement in the record before the court, submitted by defendant in the appendix with defendant's motion to dismiss and also attached to plaintiff's response to defendant's motion to dismiss,[1] was signed by Ms. Sanchez and dated April 18, 2018, but is missing a witness signature on the line on which a human resources representative is supposed to sign. Defendant also submitted a BOP human resources document in the appendix with its motion to dismiss, which defendant contends is associated with the alleged April 2018 Student Loan Repayment Agreement (hereinafter the 2018 HR Pre-Approval Document). Although not addressed by plaintiff or defendant in their submissions to the court in this case, the court notes that the 2018 HR Pre-Approval Document contains a single, digital signature dated April 18, 2018 by Federal Correctional Institution (FCI) Bennettsville Warden Travis Bragg next to the title

---

[1] The only exhibits included with plaintiff's complaint are the United States Court of Federal Claims' Civil Cover Sheet and a photocopy of an envelope showing that plaintiff's complaint was received by the United States Court of Federal Claims on March 31, 2025. Plaintiff did not attach any other exhibits to her complaint, including either the alleged April 2018 Student Loan Repayment Agreement or the January 2019 Student Loan Repayment Agreement.

"CEO."[2] The 2018 HR Pre-Approval Document is not, however, signed by the BOP Regional Director, Bureau Personnel Director, Assistant Director, or any other BOP or Department of Justice official. On the final page of the 2018 HR Pre-Approval Document, under the heading "Final Action," the approval box is unchecked and the box next to the "amount approved" is blank. Moreover, plaintiff does not allege, and has not produced any documentation to demonstrate, that the alleged April 2018 Student Loan Repayment Agreement was ever signed or approved by a government employee with authority to sign on behalf of the United States. Nor has plaintiff alleged or demonstrated that any repayments were made by the BOP on plaintiff's behalf in 2018.

The copy of the January 2019 Student Loan Repayment Agreement in the record before the court, submitted by defendant in the appendix with defendant's motion to dismiss and also attached to plaintiff's response to defendant's motion to dismiss, includes Ms. Sanchez's signature and an illegible signature, beginning with the letter "B" and followed by the letters "HRS."[3] Both Ms. Sanchez's signature and the illegible signature are dated January 4, 2019. Ms. Sanchez's signature is written on the line that indicates "Witness (HR representative)," rather than on the signature line for an individual signee. Neither plaintiff nor defendant, however, have challenged the validity of the January 2019 Student Loan Repayment Agreement, nor has either party identified the person to whom the above-described illegible signature belongs. Defendant also submitted a separate human resources approval document in the appendix with its motion to dismiss, which defendant contends is associated with the January 2019 Student Loan Repayment Agreement (hereinafter the 2019 HR Approval Document). The 2019 HR Approval Document contains three digital signatures. Specifically, the first page of the 2019 HR Approval Document contains a digital signature by FCI Bennettsville Warden Travis Bragg dated April 18, 2018 next to the title "CEO." The first page of the 2019 HR Approval Document also contains a digital signature by Ms. Shannon Phelps dated March 4, 2019, and indicates that Ms. Phelps was "[a]cting for" the BOP Regional Director. (alteration added). Moreover, the final page of the 2019 HR Approval Document contains, under the heading "Final Action," a digital signature by Ms. Leona Smith dated June 5, 2019 and indicates that Ms. Smith was "[a]cting for" the Bureau Personnel Director. (alteration added). The approval box is checked and the "amount approved" indicates "30,000." Although the final page of the 2019 HR Approval Document also contains a field for the BOP Assistant Director's signature, for reasons not identified in the record before

---

[2] At oral argument on defendant's motion to dismiss, defendant stated that Mr. Bragg was the Warden of FCI Bennettsville, which would be the CEO of FCI Bennettsville for purposes of the approval process detailed in Program Statement 3530.02.

[3] Based on the record before the court, it appears that the letters "HRS" may refer to a Human Resources Specialist in BOP's Human Resource Management Division.

the court, that signature field is blank and, instead, the box next to the letters "N/A" is checked.[4]

On August 23, 2021, plaintiff submitted a voluntary resignation from the BOP, effective September 9, 2021.[5] According to plaintiff's complaint, when Ms. Sanchez ceased working at the BOP in 2021, "Defendants[6] made representations that Plaintiff had not worked 3 years and was ineligible for Student Loan Repayment." Plaintiff alleges in her complaint that defendant "never informed plaintiff that her work time from the date she signed the [alleged April 2018 Student] Loan Repayment Agreement in April 2018 was not being credited toward the 3 year work requirement for Student Loan Repayment[.]" (alterations added). In her response to defendant's motion to dismiss, plaintiff states that, after her resignation, she "was sent bills from USDA/NFC [United States Department of Agriculture/National Finance Center] Administrative Collections beginning December 5, 2022 for $27,705,"[7] and that "she contested the amount due on the bill dispute form dated December 5, 2022," a copy of which plaintiff attached to her

_____

[4] While Program Statement 3530.02 states that final approval of BOP Student Loan Repayment Agreements rests with "the Bureau Personnel Director, and the Assistant Director over the discipline involved," as noted above, the 2019 HR Approval Document is not signed by the BOP's Assistant Director. Neither plaintiff nor defendant, however, have challenged the validity of the January 2019 Student Loan Repayment Agreement.

[5] The court notes that, after a gap in service, defendant indicated to the court at oral argument on defendant's motion to dismiss that Ms. Sanchez, recently, had been reemployed at the BOP, and was, at the time of the oral argument, again, a valued employee at the BOP.

[6] Unless otherwise noted, all quotes are reproduced as written in the briefs signed and submitted by plaintiff's attorney, which, although not all included in this Opinion, contain numerous typographic errors, which are repeated throughout plaintiff's submissions to the court.

[7] Plaintiff alleges that the Department of Agriculture, National Finance Center sent her a bill for $27,705.00 and that, after contesting the bill, she received a demand letter stating that she was required to pay $27,705.00 to the Department of Justice. Subsequently, as discussed below, plaintiff submitted a request for waiver form to the BOP requesting that the $27,705.00 payment demand be "forgiven," which BOP Regional Director William Lothrop denied and stated that plaintiff was "responsible for the bill in the amount of $27,705.00." The record before the court demonstrates, and the parties do not dispute, that plaintiff signed the January 2019 Student Loan Repayment Agreement on January 4, 2019, that plaintiff resigned from the BOP on September 9, 2021, and that the BOP made three student loan repayments on plaintiff's behalf as a result of the January 2019 Student Loan Repayment Agreement between 2019 and 2021, totaling $30,000.00. The court notes that the discrepancy between the amount agreed to be paid by the BOP, $30,000.00, and the payment demand, $27,705.00, is not explained in the parties' briefings or in the record before the court.

response to defendant's motion to dismiss. (alteration added). On January 4, 2022, plaintiff received a demand letter stating that she was required to pay $27,705.00 to the United States Department of Justice by January 25, 2022, because she had failed to complete her service agreement. On January 5, 2022, plaintiff sent an email to the BOP's Consolidated Processing Unit regarding the demand letter, which stated:

> My name is Bianca Sanchez. I was previously employed by the Bureau of Prisons, Federal Correctional Institution Bennettsville, as the Quality Management/Infectious Disease Nurse. After closely approaching five years in the bureau, I elected to depart on September 9, 2021, with prior notice.
>
> This email is in regards to a Demand Notice For Payment letter I received through the USPS on January 4, 2022. The letter states that I must pay $27,705.00 to the U.S [sic] Department of Justice by 1/25/2022, for failure to complete the SVC agreement. After contacting the HRM [Human Resource Manager] at FCI BEN [Federal Correctional Institution Bennettsville], I was informed that this was in reference to my student loan repayment agreement. I am emailing you today requesting a waiver to forgive this payment demand.
>
> I have reviewed all documents that I had previously printed and sent to my personal email in reference to my student loan repayment. After thorough review, I was able to understand how I was in violation of my agreement. The initial agreement that I signed on 4/18/18 stated that I must fulfill 36 months in the bureau beginning the date that the repayment is made. It also stated that a payment would be made in 2018, 2019, and 2020. However, after failure of my local HRS to submit requested documents on my behalf up to the region in a timely manner, I was required to resign [sic] my agreement for resubmission. After carefully reviewing the agreement that I was asked to resign [sic] on 1/3/19, I noticed that it stated the same details and information, as the initial agreement, with the exception of the loan repayment years which newly reflected 2019, 2020, and 2021.
>
> Although this change was not brought to my attention when I was asked to sign the new agreement, I do understand that it was my responsibility to thoroughly review the document. However, I am still kindly asking that you consider my request to forgive this repayment demand. Although I may have not completed 36 months of bureau service beginning the date of payment, I have completed well over 36 months at FCI BEN as either a Clinical Nurse or the Quality Management/Infectious Disease Nurse.
>
> I have attached all the documents and emails in reference to my extensive ongoing student loan repayment request that I have access to, here at home, for your review. Please feel free to contact me by either email or phone, both listed below. I look forward to a response from you soon.

(emphasis in original; alterations added). On the next day, January 6, 2022, plaintiff also submitted to the BOP her "Request for Compromise of Claim for Erroneous Pay" form requesting that the $27,705.00 payment demand be "forgiven." Plaintiff's "Request for Compromise of Claim for Erroneous Pay" form also stated: "Signed 1st SLRP [Student Loan Repayment Program] Agreement in 2018. Due to an administrative oversight, the SLRP request was not approved in 2018. The request had to be resubmitted by the HR Department for processing and approval/disapproval. The new request was approved June 2019." (alteration added). In a memorandum dated June 14, 2022, BOP Regional Director Lothrop denied plaintiff's "Request for Compromise of Claim for Erroneous Pay" and stated that plaintiff was "responsible for the bill in the amount of $27,705.00." Plaintiff alleges, however, that Regional Director Lothrop's memorandum "was not provided to Plaintiff in response to her submitted Compromise of Claim request" and that, instead, "Plaintiff had to request the status of her compromise of claim," which the BOP subsequently provided to her via email on October 31, 2022. Based on allegations in plaintiff's complaint, as of the date of plaintiff's complaint, her student loan debt has gone to collections and continues to accrue interest.

On January 31, 2024, plaintiff filed a lawsuit in the Fourth Judicial Circuit Court, Marlboro County, South Carolina claiming that the BOP had breached a contract to repay a portion of plaintiff's loans, that defendant is liable to plaintiff under a quantum meruit theory, and that defendant was negligent for failing to process the alleged April 2018 Student Loan Repayment Agreement plaintiff had signed. On March 6, 2024, the case was removed to the United States District Court for the District of South Carolina, after which the defendants named by plaintiff, the Department of Justice Attorney General Merrick B. Garland and the BOP, filed a motion to dismiss the case for lack of subject matter jurisdiction. On December 31, 2024, the United States District Court for the District of South Carolina issued an order granting the defendants' motion to dismiss for lack of subject matter jurisdiction. See Sanchez v. Garland, No. 4:24-cv-01149-JD (D.S.C. Dec. 31, 2024). The United States District Court for the District of South Carolina Judge concluded that the United States District Court for the District of South Carolina lacked subject matter jurisdiction over Ms. Sanchez's breach of contract claim, which he stated "is subject to the exclusive jurisdiction of the [United States] Court of Federal Claims." Id. (alteration added). With respect to Ms. Sanchez's quantum meruit claim, the United States District Court for the District of South Carolina Judge determined that "Sanchez's quantum meruit and contract claims are the same" because "the 'source of the rights upon which' Sanchez bases her claims is exclusively the purported agreement." Id. The United States District Court for the District of South Carolina Judge also stated in a footnote: "The Court has concluded . . . that Sanchez has only one contract claim. But even if that were not so, Sanchez's quantum meruit claim is a claim implied in law. The Court of Federal Claims has no jurisdiction over such claims." Id. (internal reference omitted) (citing Hercules Inc. v. United States, 516 U.S. 417, 423 (1996)). The United States District Court for the District of South Carolina Judge also dismissed that part of plaintiff's claim within the District Court's jurisdiction that alleged a tort committed by defendant because plaintiff had provided "no basis for the Court to conclude that any extra-contractual relationship between Sanchez and Defendants created the duty of care

Sanchez asserts was breached in this case." Id. The United States District Court for the District of South Carolina Judge considered "whether to dismiss or transfer the action" pursuant to 28 U.S.C. § 1631 (2024) and, after recounting the requirements of the statute at 28 U.S.C. § 1631, stated that "[t]he Court need not reach all three elements to conclude transfer is inappropriate. Here, the interests of justice would be served by dismissing Sanchez's contract claim without prejudice with leave to refile in the [United States] Court of Federal Claims." Sanchez v. Garland, No. 4:24-cv-01149-JD (alterations added). Explaining his rationale for dismissing Ms. Sanchez's breach of contract claim, rather than ordering a transfer, the United States District Court for the District of South Carolina Judge stated:

> In an email attached to Sanchez's response upon which she relied heavily in disputing that she failed to exhaust her administrative remedies, Sanchez acknowledged that she "was able to understand how [she] was in violation of [her] agreement" and that Sanchez "may have not completed 36 months of bureau service beginning the date of payment . . . ." Of course, Sanchez's entire claim—which the Court takes as true—turns on the fact that Defendants declined to uphold their side of the bargain. Sanchez's concession that she breached the terms of the agreement suggests that her claim has no merit.

Id. (alterations, omission, and emphasis in original; internal citations omitted).

As indicated above, after the dismissal in District Court, on March 31, 2025, plaintiff filed her complaint in the United States Court of Federal Claims. In her complaint, plaintiff asserts that defendant failed to perform its obligations under the alleged April 2018 Student Loan Repayment Agreement she had signed and that, "as a result of Plaintiff's performance in reliance on the promise of student loan repayment, Plaintiff has a vested right to receive payment of student loans by Defendant, which was linked to Plaintiff's services performed as an employee of Defendant." In count one of plaintiff's complaint, she asserts that defendant breached an alleged contract between her and defendant by refusing to honor the terms of the alleged April 2018 Student Loan Repayment Agreement with the BOP without notice or explanation. Plaintiff also alleges, in count two of her complaint, a quantum meruit claim in which plaintiff contends that defendant received the benefit of three years of plaintiff's labor without fulfilling all the terms of the alleged April 2018 Student Loan Repayment Agreement. Plaintiff, therefore, claims that "Defendant's retention and utilization of the work performed by Plaintiff, without fully compensating Plaintiff for work and productivity, despite promising and representing to Plaintiff that it [plaintiff's student loan contributions] would be paid, is unjust and inequitable." (alteration added).

In response to plaintiff's complaint, defendant filed a motion to dismiss count one for failure to state a claim upon which relief can be granted and count two for lack of subject matter jurisdiction. Defendant argues that plaintiff's breach of contract claim, count one of plaintiff's complaint, fails to state a claim upon which relief can be granted because no contract existed between plaintiff and defendant in 2018 and because plaintiff

is the one who breached the January 2019 Student Loan Repayment Agreement by voluntarily terminating her employment on September 9, 2021, before the date specified by the terms of the January 2019 Student Loan Repayment Agreement, June 9, 2022. Relying on the January 2019 Student Loan Repayment Agreement that both parties appear to have accepted as a valid contract, defendant argues that since the January 2019 Student Loan Repayment Agreement provided that the 36-month service requirement began on the date of the first repayment, which was made on June 9, 2019, plaintiff breached the agreement by voluntarily resigning on September 9, 2021, prior to June 9, 2022. Defendant also points out that plaintiff acknowledged that "I was able to understand how I was in violation" of the January 2019 Student Loan Repayment Agreement in an email dated January 5, 2022 to the BOP's Consolidated Processing Unit. Furthermore, defendant argues that plaintiff has acknowledged her failure to complete the 36-month service requirement by asking for a waiver for the money she owed.[8] Additionally, defendant argues that even if the alleged April 2018 Student Loan Repayment Agreement could be considered a valid contract, plaintiff's breach of contract claim "would have arisen more than six years before the complaint was filed in this case on March 31, 2025, and so would be barred by the statute of limitations." Regarding count two of plaintiff's complaint, defendant argues that the quantum meruit claim must be dismissed because this court does not possess subject matter jurisdiction over plaintiff's quantum meruit claim.

In her response to defendant's motion to dismiss, plaintiff argues that "[b]ased on the complaint allegations alone, Plaintiff has alleged a breach of contract with respect to the 2018 SLRP agreement." (alteration added). Plaintiff argues that the alleged April 2018 Student Loan Repayment Agreement should not be subject to the approval process described in Program Statement 3530.02 because "Plaintiff's SLRP agreements make no mention of the three tier approval process and provides a clear loan repayment schedule in 2018 and 2019." With respect to count two, plaintiff's quantum meruit claim, plaintiff argues that she is "entitled to compensation" because she "conferred on the government her services as a nurse, which the government accepted from 2017 – 2021," yet the government claimed her 2018 student loan repayment agreement was invalid. Plaintiff also argues that she "has alleged an express or implied contract with the government when she provided proof that she was offered and accepted SLRP agreements and performed the contract as presented to her." Defendant's motion to dismiss has been fully briefed and the court held oral argument.

---

[8] Because plaintiff is allowed to pursue alternative modes of recovery without admitting fault, that plaintiff sought a waiver for her repayment does not necessarily constitute a concession of wrongdoing.

**D I S C U S S I O N**

Count One: Breach of Contract

As indicated above, defendant argues that plaintiff's breach of contract claim should be dismissed for failure to state a claim upon which relief can be granted. When examining what must be pled in order to state a claim, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2) (2024); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid. [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure §1216 pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Nietzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") . . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56, 570 (footnote and other citations omitted; omissions in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570); Boyd v. United States, 134 F.4th 1348, 1352 (Fed. Cir. 2025); Cotter Corp., N.S.L. v. United States, 127 F.4th 1353, 1366 (Fed. Cir. 2025); AlexSam, Inc. v. Aetna, Inc., 119 F.4th 27, 39 (Fed. Cir. 2024); Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1352 (Fed. Cir. 2021); First Mortg. Corp. v. United States, 1961 F.3d 1331, 1339 (Fed. Cir. 2020); Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1380 (Fed. Cir. 2019); Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016); A & D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1157 (Fed. Cir. 2014); Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Kam-Almaz v. United States, 682 F.3d 1364, 1367 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354-55 (Fed. Cir.), cert. denied, 562 U.S. 830 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 545, 557)), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 544)); Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (internal citations omitted) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570)), reh'g denied (Fed. Cir.), cert. denied, 557 U.S. 937 (2009); SLSCO, Ltd. v. United States, 176 Fed. Cl. 767, 773 (2025); Day v. United States, 176 Fed. Cl. 634, 637 (2025); Otis v. United States, 176 Fed. Cl. 1, 6 (2025); Tyson v. United States, 174 Fed. Cl. 205, 209 (2024), aff'd, No. 2025-1443, 2025 WL 945653 (Fed. Cir. Mar. 26, 2025); Del Mar v. United States, 173 Fed. Cl. 159, 164 (2024); BCG Fed. Corp. v. United States, 172 Fed. Cl. 543, 553 (2024). "Dismissal 'for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy.'" Conti v. United States, 168 Fed. Cl. 547, 554 (2023) (quoting Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002)), aff'd, No. 2024-1403, 2024 WL 4100410 (Fed. Cir. Sept. 6, 2024).

In the case currently before this court, plaintiff requests relief from this court for an alleged breach of contract by defendant based on the alleged April 2018 Student Loan Repayment Agreement which plaintiff had signed. Defendant argues, however, that there was no binding Student Loan Repayment Agreement between the parties until the 2019 student loan repayment request was properly approved by defendant in 2019 by the BOP Regional Director and the Bureau Personnel Director. Defendant contends that the January 2019 Student Loan Repayment Agreement was the only contract between the government and plaintiff that was signed by an authorized government official for the BOP, and that defendant could not have breached the alleged April 2018 Student Loan Repayment Agreement since, according to defendant, it was not a fully executed contract by both plaintiff and defendant.

To have privity of contract with the United States government, and, therefore, to invoke jurisdiction in the United States Court of Federal Claims for an alleged breach of contract claim, plaintiff "must show that either an express or implied-in-fact contract underlies [the] claim." Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (alteration added); see also Fairholme Funds, Inc. v. United States, 26 F.4th 1274, 1293-94 (Fed. Cir. 2022), cert. denied, 143 S. Ct. 563 (2023); Turping v. United States, 913 F.3d 1060, 1065 (Fed. Cir. 2019); Park Props. Assocs., L.P. v. United States, 916 F.3d 998, 1002 (Fed. Cir. 2019), cert. denied, 589 U.S. 1133 (2020). "An express contract

"'must be manifested by words, either oral or written, which contains agreement and/or mutual assent.'" Frankel v. United States, 118 Fed. Cl. 332, 335 (2014) (quoting Essen Mall Props. v. United States, 21 Cl. Ct. 430, 439 (1990), and quoting Webster University v. United States, 20 Cl. Ct. 429, 433 (1990)), aff'd, 842 F.3d 1246 (Fed. Cir. 2016). As explained by the United States Court of Appeals for the Federal Circuit:

> There are four requirements to form a contract with the Government: "(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States." These elements apply to both express and implied-in-fact contracts.

Boyd v. United States, 134 F.4th at 1352 (internal citations omitted); see also Fairholme Funds, Inc. v. United States, 26 F.4th at 1293-94; Columbus Reg'l Hosp. v. United States, 990 F.3d 1330, 1339 (Fed. Cir. 2021); Am. Bankers Ass'n v. United States, 932 F.3d at 1381; Bank of Guam v. United States, 578 F.3d at 1326 (quoting Trauma Serv. Grp. v. United States, 104 F.3d at 1325); see also Chattler v. United States, 632 F.3d 1324, 1330 (Fed. Cir. 2011) (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1325); Night Vision Corp. v. United States, 469 F.3d 1369, 1375 (Fed. Cir. 2006), cert. denied, 550 U.S. 934 (2007); Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003) ("Thus, the requirements for an implied-in-fact contract are the same as for an express contract; only the nature of the evidence differs."); City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998); San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989); Platinum Servs., Inc. v. United States, 177 Fed. Cl. 325, 341 (2025); Kennedy Collective v. United States, 174 Fed. Cl. 545, 554 (2025); GBA Assocs. Ltd. P'ship v. United States, 171 Fed. Cl. 93, 100 (2024); Kehmeier v. United States, 170 Fed. Cl. 393, 397-98 (2024); Yifrach v. United States, 145 Fed. Cl. 691, 698 (2019), aff'd, 825 F. App'x 899 (Fed. Cir. 2020); Stanwyck v. United States, 127 Fed. Cl. 308, 312 (2016); Huntington Promotional & Supply, LLC v. United States, 114 Fed. Cl. 760, 767 (2014); Eden Isle Marina, Inc. v. United States, 113 Fed. Cl. 372, 492 (2013); Council for Tribal Emp. Rts. v. United States, 112 Fed. Cl. 231, 243 (2013), aff'd, 556 F. App'x 965 (Fed. Cir. 2014); BioFunction, LLC. v. United States, 92 Fed. Cl. 167, 172 (2010); Mastrolia v. United States, 91 Fed. Cl. 369, 384 (2010) (citing Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1265 (Fed. Cir. 2005), and citing Abraham v. United States, 81 Fed. Cl. 178, 184 (2008)); see also Trauma Serv. Grp. v. United States, 104 F.3d at 1325; Weeks v. United States, 124 Fed. Cl. 630, 633 (2016); Vargas v. United States, 114 Fed. Cl. 226, 233 (2014); Prairie Cnty., Mont. v. United States, 113 Fed. Cl. 194, 202 (2013), aff'd, 782 F.3d 685 (Fed. Cir.), cert. denied, 577 U.S. 923 (2015); Cal. Hum. Dev. Corp. v. United States, 87 Fed. Cl. 282, 293 (2009), aff'd, 379 F. App'x 979 (Fed. Cir. 2010); Aboo v. United States, 86 Fed. Cl. 618, 629, aff'd, 347 F. App'x 581 (Fed. Cir. 2009); SGS-92-X003 v. United States, 74 Fed. Cl. 637, 653-54 (2007); Arakaki v. United States, 71 Fed. Cl. 509, 514 (2006), aff'd, 228 F. App'x 1003 (Fed. Cir. 2007); Fincke v. United States, 230 Ct. Cl. 233, 244, 675 F.2d 289, 295 (1982); Russell Corp. v. United States, 210 Ct. Cl. 596, 608-09 (1976).

For a valid contract to come into existence, a person with authority to bind the government must also accept. See Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947) ("Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority."); see also Ravi v. United States, 104 F.4th 1359, 1369 (Fed. Cir. 2024). It is key to contract formation with the government that, "[t]he law requires that a Government agent who purports to enter into or ratify a contractual agreement that is to bind the United States have actual authority to do so." Monarch Assurance P.L.C. v. United States, 244 F.3d 1356, 1360 (Fed. Cir.) (alteration added) (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1325), reh'g and reh'g en banc denied (Fed. Cir. 2001); see also Liberty Ammunition, Inc. v. United States, 835 F.3d 1388, 1401 (Fed. Cir. 2016) ("A Government agent must have actual authority to bind the Government to a contract.") (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1325). "The corollary is that any party entering into an agreement with the Government accepts the risk of correctly ascertaining the authority of the agents who purport to act for the Government[.]" Monarch Assurance P.L.C. v. United States, 244 F.3d at 1360 (alteration added) (citing Federal Crop Ins. Corp. v. Merrill, 332 U.S. at 384); see also Snyder & Assocs. Acquisitions LLC v. United States, 133 Fed. Cl. 120, 126 (2017). "Actual authority may be either express or implied." Liberty Ammunition, Inc. v. United States, 835 F.3d at 1402 (citing Salles v. United States, 156 F.3d 1383, 1384 (Fed. Cir. 1998)); see also H. Landau & Co. v. United States, 886 F.2d 322, 324 (Fed. Cir. 1989) ("Although apparent authority will not suffice to hold the government bound by the acts of its agents, implied actual authority, like expressed actual authority, will suffice.") (internal citations omitted); White v. United States, 175 Fed. Cl. 226, 238 (2025); Yifrach v. United States, 169 Fed. Cl. 33, 57 (2024); Panther Brands, LLC v. United States, 146 Fed. Cl. 204, 215 (2019). A government official has "express actual authority to bind the government in contract only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms." Jumah v. United States, 90 Fed. Cl. 603, 612 (2009), aff'd, 385 F. App'x 987 (Fed. Cir. 2010); White v. United States, 175 Fed. Cl. at 238; Yifrach v. United States, 169 Fed. Cl. at 56; Tracy v. United States, 55 Fed. Cl. 679, 682 (2003); McAfee v. United States, 46 Fed. Cl. 428, 435 (2000)). A government official "has implied actual authority to enter an agreement only when that authority is an 'integral part of the duties assigned to [the] government employee.'" Liberty Ammunition, Inc. v. United States, 835 F.3d at 1402 (alteration in original) (quoting H. Landau & Co. v. United States, 886 F.2d at 324); see also White v. United States, 175 Fed. Cl. at 238; Abare v. United States, 167 Fed. Cl. 478, 491-92 (2023). "[P]laintiffs have the burden of demonstrating the relevant government representative had actual authority to enter the alleged contract." Yifrach v. United States, 169 Fed. Cl. at 56 (alteration added) (citing Harbert/Lummus Agrifuels Projects v. United States, 142 Fed. Cl. 1429, 1432 (Fed. Cir. 1998), and citing Doe v. United States, 48 Fed. Cl. 495, 501 (2000)).

Although no one with authority to bind the government initially entered into a contract, in limited circumstances, a contract can come into existence if it is subsequently

ratified by someone who has the authority to contract on behalf of the government. See Winter v. Cath-dr/Balti Joint Venture, 497 F.3d 1339, 1347 (Fed. Cir. 2007); Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d at 1433-34. The ratifying official must have actual or constructive knowledge of the unauthorized acts in order to subsequently ratify a contract. See Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d at 1433 ("Agreements made by government agents without authority to bind the government may be subsequently ratified by those with authority if the ratifying officials have actual or constructive knowledge of the unauthorized acts.") (citing United States v. Beebe, 180 U.S. 343, 354 (1901)). Ratification of a previously invalid contract "requires knowledge of material facts involving the unauthorized act and approval of the activity by one with authority." Winter v. Cath-dr/Balti Joint Venture, 497 F.3d at 1347 (citing Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d at 1433-34). The United States Supreme Court has stated:

> Where an agent has acted without authority and it is claimed that the principal has thereafter ratified his act, such ratification can only be based upon a full knowledge of all the facts upon which the unauthorized action was taken. This is as true in the case of the government as in that of an individual. Knowledge is necessary in any event. If there be want of it, though such want arises from the neglect of the principal, no ratification can be based upon any act of his. Knowledge of the facts is the essential element of ratification, and must be shown or such facts proved that its existence is a necessary inference from them.

United States v. Beebe, 180 U.S. at 354 (internal citations omitted). Ratification must be based on a demonstrated acceptance of the contract, and silence is not a sufficient demonstration of this acceptance. See Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d at 1434 ("Silence in and of itself is not sufficient to establish a demonstrated acceptance of the contract by the CO [Contracting Officer].") (alteration added); see also EWG Assocs., Ltd. v. United States, 231 Ct. Cl. 1028, 1030 (1982) ("Ratification, however, must be based on a demonstrated acceptance of the contract.").

Plaintiff acknowledges in her response to defendant's motion to dismiss that the plaintiff bears the burden of having to show specifically which term or condition of the contract defendant breached. See Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 715 (2010) ("[T]here is a minimum burden for Plaintiff, in asserting a breach of contract claim, to explicitly identify the provisions and terms of the contract that have been breached.") (alteration added) (quoting Garreaux v. United States, 77 Fed. Cl. 726, 730 (2007)); see also RCFC 9(k) (2024) ("In pleading a claim founded on a contract or treaty, a party must identify the substantive provisions of the contract or treaty on which the party relies. In lieu of a description, the party may annex to the complaint a copy of the contract or treaty, indicating the relevant provisions."); Kinsey v. United States, 176 Fed. Cl. 762, 765 (stating that RCFC 9(k) "mandates that a plaintiff cite the substantive provisions of the contract that form the foundation of its breach of contract claim"), recons. denied, 177 Fed. Cl. 208 (2025); Deweese v. United States, 171 Fed. Cl. 187, 198 (2024) ("A plaintiff that attaches a copy of the alleged contract to the complaint and 'identif[ies]

the provisions and terms of the contract that have been breached' satisfies its burden under RCFC 9(k) because doing so allows the court to 'render a decision . . . know[ing] the relevant terms of the contract.'") (alterations and omission in original) (quoting Garreaux v. United States, 77 Fed. Cl. at 730), aff'd, No. 2024-1791, 2024 WL 5002116 (Fed. Cir. Dec. 6, 2024), cert. denied, 145 S. Ct. 1942, reh'g denied, 145 S. Ct. 2811 (2025); Tomko v. United States, No. 24-773C, 2024 WL 5279873 (Fed. Cl. Dec. 2, 2024), aff'd, No. 2025-1312, 2025 WL 1911494 (Fed. Cir. July 11, 2025). The court notes, however, that plaintiff did not attach a copy of either the alleged April 2018 Student Loan Repayment Agreement or the January 2019 Student Loan Repayment Agreement to her complaint.

In the case currently before the court, plaintiff alleges that the alleged April 2018 Student Loan Repayment Agreement was a valid contract between plaintiff and defendant. Plaintiff claims that there was an offer and an acceptance of the alleged April 2018 Student Loan Repayment Agreement because, according to plaintiff, defendant made an offer when Human Resources Specialist Beth Graham presented plaintiff with the alleged April 2018 Student Loan Repayment Agreement via email on April 17, 2018, and plaintiff accepted that offer by signing the alleged April 2018 Student Loan Repayment Agreement on April 18, 2018. Plaintiff claims that she met the terms of the alleged April 2018 Student Loan Repayment Agreement because she had "well fulfill[ed] the obligation of 3 years of service having worked 2017 – 2021." (alteration added). Plaintiff also alleges that defendant breached the alleged April 2018 Student Loan Repayment Agreement, which she had signed, because the agreement stated that the loan repayment schedule would be "one repayment of $10,000 in calendar year 2018, one repayment of $10,000 in calendar year 2019, and one repayment of $10,000 in calendar year 2020," but defendant never made any repayment in 2018. Plaintiff also tries to argue that "Defendant had a duty to properly process the 2018 agreement as promised to Plaintiff as an employment retention or incentive" and that her breach of contract claim arose because "Defendant failed to properly process" the alleged April 2018 Student Loan Repayment Agreement after she signed it on April 18, 2018. Moreover, plaintiff argues that the alleged April 2018 Student Loan Repayment Agreement should not be subject to the approval process outlined in Program Statement 3530.02, described above, but not stated in the alleged April 2018 Student Loan Repayment Agreement itself, because "unless there is explicit language incorporating BOP regulations or statutes into a contract, the court should not import into a contract, these terms and policies and procedures that are outside of the contract presented to Plaintiff."[9] Plaintiff claims that "[b]y using the processing and policy arguments about when the time of service began, when the agreement was offered accepted and/or ratified, and the processing of the 2018

_____

[9] Although plaintiff does not clarify which statutes, regulations, and policies she refers to in her responsive briefing, based on the record before the court, plaintiff may be referring to the statute at 5 U.S.C. § 5379, its implementing regulations at 5 CFR Part 537, and Program Statement 3530.02. As indicated above, the BOP established the Student Loan Repayment Program pursuant to 5 U.S.C. § 5379 and its implementing regulations, and Program Statement 3530.02 provides guidance for the implementation of the BOP's Student Loan Repayment Program.

and 2019 SLRP agreements, Defendant appears to incorporate statute or regulations into the 2 page contract that is the SLRP agreement." (alteration added).

Defendant makes a number of arguments in response, including that the alleged April 2018 Student Loan Repayment Agreement is not a valid contract because, according to defendant, no government official with authority to contract signed or otherwise approved the alleged April 2018 Student Loan Repayment Agreement after plaintiff signed the alleged agreement in 2018. Defendant argues that the "BOP human resources contact [Ms. Beth Graham] who provided Ms. Sanchez the agreement did not possess actual authority to bind the United States in contract such that the agreement could be offered on April 17, 2018, for Ms. Sanchez to sign the following day" and result in a contract between plaintiff and defendant at that time. (alteration added). Moreover, defendant argues that even if the alleged April 2018 Student Loan Repayment Agreement could be considered a contract binding on the United States, plaintiff is the party in breach because the alleged April 2018 Student Loan Repayment Agreement stated that plaintiff agreed "to remain in the service of the Bureau of Prisons for a period of 36 months, beginning on the date that the repayment is made," yet plaintiff failed to satisfy the 36-month service requirement because the first repayment made by defendant was not made until June 9, 2019 and plaintiff voluntarily departed BOP service prior to June 9, 2022. Defendant also argues that "nothing in the 2018 document, even if it could be considered a contract that existed between the parties, imposed an obligation on BOP to 'process' the document in a particular manner." Further, defendant argues that "the policy [referring to Program Statement 3530.02] and statute [referring to 5 U.S.C. 5379] are not cited to be incorporated as terms of the agreement [with plaintiff], but detail the authority by which BOP may enter a SLRP agreement." (alterations added). Finally, defendant asserts that

> if BOP did, in fact, breach the "contract" by failing to make a payment in 2018, then Ms. Sanchez's claim for such breach would have arisen more than six years before the complaint was filed in this case on March 31, 2025, and so would be barred by the statute of limitations.

In plaintiff's case, although plaintiff alleges that a 2018 contract came into existence, plaintiff has not alleged in her complaint, demonstrated with evidence, or even argued in her submissions to the court, that a government employee authorized to enter binding contracts on behalf of the United States entered into the alleged April 2018 Student Loan Repayment Agreement with plaintiff on behalf of the BOP.[10] Nor has plaintiff

---

[10] In fact, plaintiff's complaint contains only a single reference to the term "authority." Under the heading "PARTIES" in plaintiff's complaint, plaintiff states: "Merrick B. Garland, (hereinafter "Garland"), is the Attorney General of the United States and the head of the United States Department of Justice. BOP is an agency of the United States Department of Justice. As such, Garland has ultimate authority over BOP decisions." (capitalization and emphasis in original; citation omitted). Plaintiff does not, however, allege that Merrick B. Garland signed or otherwise approved the alleged April 2018 Student Loan Repayment Agreement on behalf of the BOP. Moreover, the court notes that the only proper defendant

responded with evidence to defendant's argument that no government official with authority to bind the government to a contract signed the alleged April 2018 Student Loan Repayment Agreement. Based on the record before the court, plaintiff has not supplied proof of any documentation to demonstrate that the individual plaintiff claims sent her the alleged April 2018 Student Loan Repayment Agreement, Human Resources Specialist Beth Graham, FCI Bennettsville Warden Travis Bragg, whose digital signature appears on the 2018 HR Pre-Approval Document, or any other government employee authorized to enter binding contracts on behalf of the United States, entered into the alleged April 2018 Student Loan Repayment Agreement with plaintiff on behalf of the BOP. Nor has plaintiff identified any statute, regulation, or document, delegating or granting either Mr. Bragg or Ms. Graham actual authority to enter into contracts on behalf of the United States. See Jumah v. United States, 90 Fed. Cl. at 612 (a government official has "express actual authority to bind the government in contract only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms"). Plaintiff also has not alleged or provided documentation to establish that finalizing and entering into Student Loan Repayment Agreements on behalf of the BOP was an "integral part of the duties assigned" to Mr. Bragg or Ms. Graham, such that either BOP employee could have had implied actual authority to enter into contracts on behalf of the United States. See Liberty Ammunition, Inc. v. United States, 835 F.3d at 1402. In addition to the apparent lack of actual authority of Ms. Graham, the government official identified by plaintiff in her complaint as the BOP employee who provided plaintiff with the alleged April 2018 Student Loan Repayment Agreement, the court notes that the signature line on the alleged April 2018 Student Loan Repayment Agreement where an "HR representative" was supposed to sign was left blank in the copy of the alleged April 2018 Student Loan Repayment Agreement in the record before the court. Moreover, as indicated above, on the final page of the 2018 HR Pre-Approval Document in the record before the court, under the heading "Final Action," the approval box is unchecked and the box next to the "amount approved" is blank.

In its motion to dismiss, defendant cites Anoruo v. United States, 136 Fed. Cl. 90 (2018), aff'd, 759 F. App'x 956 (Fed. Cir. 2019), with the parenthetical "discussing SLRP requirements" to try to support its argument that "there was no binding contract between the parties until the FCI Bennettsville Warden's written loan repayment request was approved in 2019 by the Regional Director and the BOP's Personnel Director in Washington, D.C." In the Anoruo v. United States case, Dr. Joseph Anoruo, a Department of Veterans Affairs employee, who worked as a clinical pharmacist with the VA Southern Nevada Healthcare System (VASNHS), sought student loan debt reimbursement allegedly promised to him under two federal student loan reimbursement programs including, as relevant here, the "Student Loan Repayment Program," pursuant to 5 U.S.C. § 5379. The United States Court of Federal Claims Judge in Anoruo v. United States

─────────────────────

for any action before the United States Court of Federal Claims is the United States, not its officers. See RCFC 10(a) (2024); see also United States v. Sherwood, 312 U.S. 584, 588 (1941) ("[I]f the relief sought [in the United States Court of Federal Claims] is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court.") (alterations added).

stated that "Mr. Bright," who the Judge identified as the "VASNHS medical center director," "offered to compensate Dr. Anoruo the sum of $40,000 out of local funds." Anoruo v. United States, 136 Fed. Cl. at 92. The Judge in Anoruo v. United States stated that "Mr. Bright was contemplating use of the federal Student Loan Repayment Program," but that "when the final SLRP paperwork was presented to Dr. Anoruo in 2009, the sum offered had been reduced to $13,300," and that "Dr. Anoruo refused to agree" to the reduced sum. Id. at 92-93. The Judge in Anoruo v. United States found that "[c]learly, Plaintiff's right to a payment under the SLRP was never established and cannot be enforced" because the underlying statute requires a "written agreement" and "[w]hen the VA offered a $13,300 compromise in the form of a written offer under the SLRP the following year, Dr. Anoruo rejected it." Id. at 94-95 (alterations added). On appeal, the United States Court of Appeals for the Federal Circuit affirmed, in an unreported opinion, the United States Court of Federal Claims' decision and stated that "although he [Dr. Anoruo] alleges a written offer to pay him $13,300, he also alleges that he rejected that offer, which thus did not create a contract." Anoruo v. United States, 759 F. App'x 956, 961 (Fed. Cir. 2019) (alteration added). This court notes that it is unclear, based on the Anoruo v. United States opinions, whether Mr. Bright had authority to enter into contracts on behalf of the government and whether the "final SLRP paperwork" that was presented to Dr. Anoruo was signed or otherwise approved by the government. Although the Anoruo v. United States case refers to the Student Loan Repayment Program, the Anoruo v. United States case is factually very different from the specific facts in the case brought by Ms. Sanchez in this court and involved a different federal agency which may have had different procedures for entering into student loan repayment agreements.

Moreover, although plaintiff does not mention FCI Bennettsville Warden Travis Bragg in her complaint or in her responsive briefing, or allege in her complaint or in her responsive briefing that FCI Bennettsville Warden Travis Bragg had actual authority to enter into binding contracts on behalf of the United States, the court notes that Mr. Bragg's digital signature appears on the 2018 HR Pre-Approval Document. Defendant's attorney of record, as an officer of this court appearing for defendant, however, has represented that Mr. Bragg did not have actual authority to enter into binding contracts on behalf of the United States at the time relevant to this case. More significantly, as indicated above, plaintiff has not produced any evidence to demonstrate that Mr. Bragg had actual authority, either express or implied, to enter into binding contracts on behalf of the United States at the time he digitally signed the 2018 HR Pre-Approval Document. In fact, plaintiff acknowledged in her "Request for Compromise of Claim for Erroneous Pay" form that her "SLRP request was not approved in 2018," "had to be resubmitted by the HR Department for processing and approval/disapproval," and "[t]he new request was approved June 2019." (alteration added). Therefore, plaintiff has failed to carry her burden to assert or demonstrate that a government official with actual authority to contract on behalf of the United States approved and agreed to the alleged April 2018 Student Loan Repayment Agreement. See Snyder & Assocs. Acquisitions LLC v. United States, 133 Fed. Cl. at 126 ("Government agents must have actual authority to bind the Government in contract— they do not have apparent authority. Private parties bear the risk that Government agents may not have actual authority to bind the Government, even when the agents themselves believe they have such authority.") (citations omitted).

Nor has plaintiff alleged facts in her complaint to demonstrate that the alleged April 2018 Student Loan Repayment Agreement was subsequently ratified by a government official with authority to bind the government to a contract. In her complaint, plaintiff alleges that "Defendants are aware that Plaintiff accepted employment on January 22, 2017 and signed the initial loan repayment agreement in April 2018 and worked for Defendants for a period of 3 years." These facts, however, even taken as true as described by plaintiff, are not sufficient to demonstrate the existence of the alleged April 2018 Student Loan Repayment Agreement as a binding contract between the parties, or to demonstrate ratification of the alleged April 2018 Student Loan Repayment Agreement. Plaintiff has not identified a government official with authority to bind the government who had "full knowledge of all the facts upon which" plaintiff claims the alleged 2018 Student Loan Repayment Agreement came into existence and who "demonstrated acceptance" of the alleged April 2018 Student Loan Repayment Agreement. See United States v. Beebe, 180 U.S. at 354 ("Where an agent has acted without authority and it is claimed that the principal has thereafter ratified his act, such ratification can only be based upon a full knowledge of all the facts upon which the unauthorized action was taken."); see also Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d at 1434; EWG Assocs., Ltd. v. United States, 231 Ct. Cl. at 1030. Plaintiff's failure to identify an individual with authority to enter into the alleged April 2018 Student Loan Repayment Agreement, or an individual with authority to subsequently ratify the alleged April 2018 Student Loan Repayment Agreement, is fatal to plaintiff's breach of contract claim.

As mentioned previously, despite presenting no evidence that a government official with actual authority to bind the United States to a contract entered into the alleged April 2018 Student Loan Repayment Agreement with plaintiff, plaintiff argues that the alleged April 2018 Student Loan Repayment Agreement should not be subject to the approval process outlined in Program Statement 3530.02 because the approval process was not stated in the alleged April 2018 Student Loan Repayment Agreement itself. According to plaintiff, "unless there is explicit language incorporating BOP regulations or statutes into a contract, the court should not import into a contract, these terms and policies and procedures that are outside of the contract presented to Plaintiff." Defendant argues, however, that defendant cited the statute at 5 U.S.C. § 5379 and Program Statement 3530.02 in its briefing, not to be incorporated as terms of the alleged April 2018 Student Loan Repayment Agreement, but to detail the procedures pursuant to which the BOP may enter into a Student Loan Repayment Agreement. In Trauma Service Group v. United States, the United States Court of Appeals for the Federal Circuit examined Department of Defense Instruction 6010.12 to determine whether a Military Treatment Facility (MTF) commander had actual contracting authority to bind the United States to a contract and stated:

> While an MTF commander has authority to negotiate an MOA [Memorandum of Agreement] to the extent authorized in 10 U.S.C. § 1096, the commander must forward this MOA to the Director, CHAMPUS [Civilian Health and Medical Program of the Uniformed Services] and the Surgeon General of the Army for approval prior to final execution of the agreement.

Trauma Serv. Grp. v. United States, 104 F.3d at 1327 (citing Department of Defense Instruction 6010.12(F)(1)) (alterations added). Likewise, this court considers statutes and regulations to determine whether a government official has express actual authority to enter into contracts on behalf of the United States. See, e.g., White v. United States, 175 Fed. Cl. at 238; Yifrach v. United States, 169 Fed. Cl. at 56; Panther Brands, LLC v. United States, 146 Fed. Cl. at 215. This court also has considered internal agency procedures and guidance to determine whether a government employee had implied actual authority to bind the United States to a contract. See, e.g., Bailey v. United States, 54 Fed. Cl. 459, 506 (2002) (examining the United States Attorneys' Manual to determine that certain United States Attorney's Office personnel lacked express or implied authority to contract on behalf of the United States), aff'd, 94 F. App'x 828 (Fed. Cir. 2004); McAfee v. United States, 46 Fed. Cl. at 437 n.5 (examining United States Department of Justice Civil Directive 14-95 to determine whether a United States Attorney had implied actual contracting authority); Roy v. United States, 38 Fed. Cl. 184, 191 (1997) (examining the Federal Bureau of Investigation (FBI) Field Office Manual of Investigative Operations and Guidelines & Administrative Operations and Procedures to determine that FBI field agents lacked actual contracting authority); Contel of California, Inc. v. United States, 37 Fed. Cl. 68, 73 (1996); Cruz-Pagan v. United States, 35 Fed. Cl. 59, 62 (1996) (examining the Drug Enforcement Agency Agent's Manual and stating that "the doctrine of implied actual authority cannot be used to create an agent's actual authority to bind the government in contract when the agency's internal procedures specifically preclude that agent from exercising such authority"). Therefore, the fact that the alleged April 2018 Student Loan Repayment Agreement did not explicitly reference the statute at 5 U.S.C. § 5379 or Program Statement 3530.02 should not, in and of itself, prevent this court from considering either when determining whether a government official with actual authority approved the alleged April 2018 Student Loan Repayment Agreement.

The statute at 5 U.S.C. § 5379(b)(3) states that "[n]othing in this section shall be considered to authorize an agency to pay any amount to reimburse an employee for any repayments made by such employee prior to the agency's entering into an agreement under this section with such employee." 5 U.S.C. § 5379(b)(3) (alteration added). Program Statement 3530.02 outlines the approval process for the BOP to enter into such statutory agreements with BOP employees as follows:

> The Chief Executive Officer must request each student loan repayment in writing through the Regional Director, who will approve or disapprove the request. If the request is approved, it is forwarded to the Staffing and Employee Relations section (SERS) for routing to the Bureau Personnel Director, and the Assistant Director over the discipline involved (Attachment C-12) for final approval.

Program Statement 3530.02 indicates that the approval process for BOP Student Loan Repayment Agreements begins with the "request" of the Chief Executive Officer of the BOP institution involved, but that "final approval" authority for BOP Student Loan Repayment Agreements rests with the Bureau Personnel Director and the Assistant Director over the discipline involved. At oral argument on defendant's motion to dismiss,

the Department of Justice attorney of record, representing the United States, represented to the court that the copy of Program Statement 3530.02 in the record before the court had been, at the time of the facts relevant to plaintiff's claims, available to Ms. Sanchez as a BOP employee via the BOP's intranet and still "is available currently to Ms. Sanchez because she's employed [by the BOP] again." (alteration added). Regardless, because, as explained above, the court finds that plaintiff has failed to carry her burden of establishing that the alleged April 2018 Student Loan Repayment Agreement was a valid contract between plaintiff and the government based on plaintiff's failure to allege actual or implied authority, even without resorting to Program Statement 3530.02, resolution of the case currently before the court does not depend on whether or not Program Statement 3530.02 had to be incorporated into the alleged April 2018 Student Loan Repayment Agreement, or whether plaintiff had knowledge of the BOP approval process.

Thus, since plaintiff has not alleged facts to demonstrate that her alleged April 2018 Student Loan Repayment Agreement was a valid contract executed or ratified by a government official with actual authority, plaintiff has failed to state a claim for breach of contract based on the alleged April 2018 Student Loan Repayment Agreement. In contrast, the January 2019 Student Loan Repayment Agreement appears to have been accepted as a valid contract by both parties and was signed by both plaintiff and defendant.[11] Moreover, it appears from the record before the court that the government followed the repayment schedule set out in the January 2019 Student Loan Repayment Agreement by making a $10,000.00 payment on plaintiff's behalf on each June 9, 2019, July 19, 2020, and June 6, 2021, whereas no payment was made by the government in 2018, and the memorandum issued by BOP Regional Director Lothrop, on June 4, 2022, acknowledged the 2019 contract. Plaintiff, however, appears to have breached the January 2019 Student Loan Repayment Agreement by voluntarily resigning on September 9, 2021, without fulfilling the 36-month service period beginning on the date that the first repayment was made, which would have ended on June 9, 2022, and which resulted in the defendant seeking repayment of the monies paid under the January 2019 Student Loan Repayment Agreement. As discussed above, Ms. Sanchez acknowledged in her January 5, 2022 email to the BOP's Consolidated Processing Unit that "I was able to understand how I was in violation of my agreement," that "I may have not completed 36 months of bureau service beginning the date of payment," which occurred on June 9, 2019, and that "I do understand that it was my responsibility to thoroughly review the document." In sum, plaintiff's breach of contract claim regarding the alleged April 2018

---

[11] As discussed above, although Program Statement 3530.02 states that final approval of BOP Student Loan Repayment Agreements rests with "the Bureau Personnel Director, and the Assistant Director over the discipline involved," (emphasis added), the signature field for the BOP Assistant Director is blank in the copy of the 2019 HR Approval Document in the record before the court. As indicated above, however, the parties have not challenged the validity of the January 2019 Student Loan Repayment Agreement.

Student Loan Repayment Agreement has failed to state a claim for which relief can be granted by this court.[12]

As indicated above, defendant also argues, in the alternative, that if, for argument's sake, as plaintiff alleges, a 2018 contract had come into existence between plaintiff and defendant, which it did not, plaintiff's complaint in this court was filed after the expiration of the applicable statute of limitations for filing plaintiff's lawsuit in this court. The statute at 28 U.S.C. § 2501 (2024) prescribes a six-year statute of limitations for filing claims in the United States Court of Federal Claims arising under the Tucker Act's waiver of sovereign immunity. See 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."). "The six-year statute of limitations set forth in section 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims." John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006), aff'd, 552 U.S. 130 (2008); see also Etchegoinberry v. United States, 132 F.4th 1374, 1378 (Fed. Cir. 2025); Winnemucca Indian Colony v. United

---

[12] The statute at 5 U.S.C. § 5379(c)(3), addressing the government's right of recovery in the event of voluntary separation before the end of a service agreement date, states that "[t]he head of the agency concerned may waive, in whole or in part, a right of recovery under this subsection if it is shown that recovery would be against equity and good conscience or against the public interest." (alteration added). Program Statement 3530.02 also reads "[t]he Attorney General may waive the right of recovery of an employee's debt under 5 U.S.C. § 5514 in whole or in part if it is determined that recovery would be against equity and good conscience or against the public interest." (alteration added). Based on the record before the court in plaintiff's case, it appears that plaintiff could well have been and be an appropriate candidate for waiver. Although plaintiff's complaint fails to allege sufficient facts to demonstrate that the parties entered into a Student Loan Repayment Agreement in 2018, the record before the court demonstrates that plaintiff worked for the BOP for over four years between January 22, 2017 and September 9, 2021. Moreover, the 2018 HR Pre-Approval Document in the record before the court stated that "Ms. Sanchez has experience and expertise that proves to be an asset to FCI Bennettsville," "Ms. Sanchez has displayed exceptional character and dedication in her position with the Bureau of Prisons," and "Ms. Sanchez's continued employment is essential to the institution meeting the inmate populations need." Additionally, defendant represented to the court at the oral argument on the defendant's motion to dismiss that Ms. Sanchez was recently rehired to work at the BOP again, and defendant stated at oral argument that plaintiff once again continues to be a valuable BOP employee. Although not within the ability of this court to order equitable relief, the record suggests that the BOP might well consider Ms. Sanchez for the waiver process outlined in the statute at 5 U.S.C. § 5379(c)(3) (and Program Statement 3530.02); provided the BOP's Student Loan Repayment Program, or a similar program, still exists at the BOP. See United States v. Amdahl Corp., 786 F.2d 387, 391-92 (Fed. Cir. 1986) ("While we are not unsympathetic with the plight of [plaintiff], we cannot bind the respondent to an unauthorized contract . . . [plaintiff] assumed the risk that the respondent had actual authority to enter into the bargain to which the parties had agreed.") (alterations and omission added).

States, 156 F.4th 1339, 1348 (Fed. Cir. 2025) ("The statute of limitations in section 2501 is jurisdictional and requires that a claim be filed 'within six years after such claim first accrues.'" (quoting 28 U.S.C. § 2501, and citing Chemehuevi Indian Tribe v. United States, 104 F.4th 1314, 1321 (Fed. Cir. 2024))); Ideker Farms, Inc. v. United States, 71 F.4th 964, 974-75 (Fed. Cir. 2023); Jones v. United States, 30 F.4th 1094, 1100 (Fed. Cir. 2022) ("To fall within the jurisdiction of the Court of Federal Claims, a claim against the United States filed in that court must be 'filed within six years after such claim first accrues.'" (quoting 28 U.S.C. § 2501, and citing John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 132-35 (2008))), cert. denied, 143 S. Ct. 566 (2023); Katzin v. United States, 908 F.3d 1350, 1358 (Fed. Cir. 2018) ("The Tucker Act statute of limitations is jurisdictional; we must therefore determine whether Plaintiffs' claims are timely before proceeding to the merits of the takings claim." (citing John R. Sand & Gravel Co. v. United States, 552 U.S. at 136)), cert. denied, 140 S. Ct. 443 (2019); Nix v. United States, 174 Fed. Cl. 260, 266 (2024); Roseberry-Andrews v. United States, 144 Fed. Cl. 29, 33, appeal dismissed, No. 2019-2386, 2019 WL 11815040 (Fed. Cir. Dec. 19, 2019).

The United States Court of Appeals for the Federal Circuit has indicated that a claim accrues "'when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Samish Indian Nation v. United States, 419 F.3d 1355, 1369 (Fed. Cir. 2005) (quoting Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003), cert. denied, 540 U.S. 1177 (2004)); see also Winnemucca Indian Colony v. United States, 156 F.4th at 1348 ("For the purposes of section 2501, a cause of action against the government accrues 'when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence.'" (emphasis in original) (quoting Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988)); Ideker Farms, Inc. v. United States, 71 F.4th at 975 ("A claim accrues 'when all the events have occurred which fix the liability of the Government' and the plaintiff 'was or should have been aware' that the claim existed." (quoting Goodrich v. United States, 434 F.3d 1329, 1333 (Fed. Cir. 2006) (quoting Hopland Band of Pomo Indians v. United States, 855 F.2d at 1577))); FloorPro, Inc. v. United States, 680 F.3d 1377, 1381 (Fed. Cir. 2012); Mildenberger v. United States, 643 F.3d 938, 944-45 (Fed. Cir. 2011); Martinez v. United States, 333 F.3d at 1303 ("A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240 (1966))); see also Schow v. United States, 177 Fed. Cl. 75, 81 (2025); Kropp Holdings, Inc. v. United States, 176 Fed. Cl. 512, 544 (2025); White v. United States, 175 Fed. Cl. at 232; Eden Isle Marina, Inc. v. United States, 113 Fed. Cl. at 481; Brizuela v. United States, 103 Fed. Cl. 635, 639, aff'd, 492 F. App'x 97 (Fed. Cir. 2012), cert. denied, 568 U.S. 1251 (2013).

As summarized by the United States Court of Appeals for the Federal Circuit in Holmes v. United States:

Section 2501 states that all claims that otherwise fall within the jurisdiction of the Court of Federal Claims "shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. A cause of action first accrues when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action.

Holmes v. United States, 657 F.3d 1303, 1317 (Fed. Cir. 2011) (citing Ingrum v. United States, 560 F.3d 1311, 1314 (Fed. Cir.), cert. denied, 558 U.S. 878 (2009)); see also Etchegoinberry v. United States, 132 F.4th at 1379; White v. United States, 175 Fed. Cl. at 232; Parkwood Assocs. Ltd. P'ship v. United States, 97 Fed. Cl. 809, 813-14 (2011) ("Because, as noted, this requirement is jurisdictional, plaintiff bears the burden of demonstrating that its claims were timely." (citing Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998))), aff'd, 465 F. App'x 952 (Fed. Cir. 2012); Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 209 (2011).

Accrual of a claim is "'determined under an objective standard'" and plaintiff does not have to possess actual knowledge of all the relevant facts in order for a cause of action to accrue. See FloorPro, Inc. v. United States, 680 F.3d at 1381 (quoting Fallini v. United States, 56 F.3d 1378, 1380 (Fed. Cir. 1995), cert. denied, 517 U.S. 1243 (1996)); see also Gov't of Greece Hellenic Air Force v. United States, 166 Fed. Cl. 546, 551 (2023), aff'd, No. 2023-2174, 2025 WL 1099627 (Fed. Cir. Apr. 14, 2025); Etchegoinberry v. United States, 165 Fed. Cl. 696, 725 (2023), aff'd, 132 F.4th 1374 (Fed. Cir. 2025); Osborn v. United States, 47 Fed. Cl. 224, 233 (2000). Moreover, "for purposes of determining when the statute of limitations begins to run, the 'proper focus' must be 'upon the time of the [defendant's] acts, not upon the time at which the consequences of the acts [become] most painful.'" Navajo Nation v. United States, 631 F.3d 1268, 1277 (Fed. Cir. 2011) (emphasis and alterations in original) (quoting Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980)). The United States Court of Appeals for the Federal Circuit in Holmes v. United States offered further explanation, writing,

the "accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." Id. [Holmes v. United States, 92 Fed. Cl. 311,] 319 [(2010)] (quoting Young v. United States, 529 F.3d 1380, 1384 (Fed. Cir. 2008)). For the accrual suspension rule to apply, the plaintiff "must either show that the defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." Young, 529 F.3d at 1384 (quoting Martinez v. United States, 333 F.3d 1295, 1319 (Fed. Cir. 2003) (en banc)).

Holmes v. United States, 657 F.3d at 1317 (alterations added; footnotes omitted).

In her case, plaintiff alleges that defendant breached the alleged April 2018 Student Loan Repayment Agreement by failing to process the alleged agreement after plaintiff signed it on April 18, 2018, and by failing to make any student loan repayment on

plaintiff's behalf in 2018 pursuant to the loan repayment schedule listed in the alleged April 2018 Student Loan Repayment Agreement. Both of these breaches alleged by plaintiff relate to events that could have occurred at some time during 2018, but no later than December 31, 2018. Therefore, the events that conceivably could have fixed the liability of the government with regard to plaintiff's alleged breach of contract claim occurred, at the very latest, by December 31, 2018. See Samish Indian Nation v. United States, 419 F.3d at 1369 ("A claim accrues under [28 U.S.C.] § 2501 'when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'") (alteration added) (quoting Martinez v. United States, 333 F.3d at 1303). According to defendant, plaintiff should have known about any possible alleged breach for failing to process the alleged April 2018 Student Loan Repayment Agreement, or failing to make a 2018 loan payment on plaintiff's behalf, in 2018 because she had a copy of the alleged April 2018 Student Loan Repayment Agreement, with the relevant repayment dates and conditions, and would have been able to view her student loan balance, and, therefore, she should have known that no payment had been made on her behalf in 2018 pursuant to an alleged April 2018 Student Loan Repayment Agreement. As a result, given that any breach of contract claim arising from the alleged 2018 Student Loan Repayment Agreement would have accrued by December 31, 2018, at the latest, plaintiff would have had to file a lawsuit for breach of contract in this court by at least December 31, 2024, or within six years of the relevant 2018 dates. See 28 U.S.C. § 2501. Plaintiff, however, filed her complaint in this court on March 31, 2025. Therefore, even if the alleged April 2018 Student Loan Repayment Agreement could have been considered a valid contract, which it cannot, a claim for breach of contract for failure to make a 2018 payment, or failure to process the alleged April 2018 Student Loan Repayment Agreement, would be barred by the applicable six-year statute of limitations.[13]

---

[13] As discussed more fully above, in plaintiff's previous action in the United States District Court for the District of South Carolina, the United States District Court for the District of South Carolina Judge concluded that "transfer is inappropriate" and, instead, "the interests of justice would be served by dismissing Sanchez's contract claim without prejudice with leave to refile in the [United States] Court of Federal Claims." Sanchez v. Garland, No. 4:24-cv-01149-JD (alteration added). In the December 31, 2024 order, the United States District Court for the District of South Carolina Judge also stated briefly in a footnote that "the six-year limitations period does not prevent Sanchez from re-filing her contract claim in the [United States] Court of Federal Claims." Id. (alteration added). The United States District Court for the District of South Carolina Judge did not elaborate further regarding the application of the statute of limitations to a future lawsuit brought by plaintiff in the United States Court of Federal Claims. Given that the United States District Court for the District of South Carolina Judge dismissed plaintiff's previous action, rather than transferred plaintiff's action to this court, and given that plaintiff filed a new action in the United States Court of Federal Claims, it is the filing date of plaintiff's action in the United States Court of Federal Claims that is relevant to the application of the Tucker Act's six-year statute of limitations in this case. See Henke v. United States, 60 F.3d 795, 800 (Fed. Cir. 1995) ("Had Henke's case been transferred by the district court to cure the

Plaintiff also argues that defendant's "negligence is evidence of breach of contract in the US Court of Federal Claims" and that defendant "had a duty to properly process the 2018 agreement as promised," and negligently failed to do so. Plaintiff cites Bird & Sons, Inc. v. United States, 190 Ct. Cl. 426 (1970), to try to support her claim that negligence can be evidence of a breach of contract. Bird & Sons, Inc. v. United States, however, is a 1970 United States Court of Claims case in which a specific contract clause stated that "Bird & Sons would be responsible for all maintenance and repairs to the truck 'other than that caused by abuse or neglect on the part of the Government.'" Id. at 428. The plaintiff in Bird & Sons, Inc. v. United States subsequently claimed that the government had treated the trucks negligently and, therefore, had breached the specific clause of the contract that explicitly prohibited that negligent behavior. See id. at 429. The Court of Claims case of Bird & Sons, Inc. v. United States, therefore, does not support a general proposition, as plaintiff suggests, that "negligence is evidence of breach of contract in the US Court of Federal Claims," but rather the Bird & Sons, Inc. v. United States case suggests that a breach of contract claim will not be barred in this court if a specific contract clause which prohibits negligent behavior is included in a contract signed by both parties. Id. at 431 ("[W]here an alleged 'negligent' act constitutes a breach of a contractually created duty, the Tucker Act does not preclude relief.") (alteration added). By contrast, in the case currently before the court, there was no 2018 contract, and, certainly, no contract clause which explicitly prohibited a specific negligent action, such as failing to process the alleged April 2018 Student Loan Repayment Agreement. The alleged April 2018 Student Loan Repayment Agreement does not contain a clause, such as the one in Bird & Sons Inc. v. United States, explicitly prohibiting a specific negligent action. The Bird & Sons Inc. v. United States analysis of Tucker Act jurisdiction does not assist plaintiff in the current case.

Apparently in an effort to cover a broad range of possible, albeit unsuccessful, bases for plaintiff's allegations, plaintiff also states that her claims fall "under the Tucker Act 28 USC §§ 1346(a)(2) and 1491 and Federal Tort Claims Act, both within the jurisdiction of the United States Court of Federal Claims." To the extent that plaintiff may be seeking to raise claims based on allegations of tortious conduct, such as negligence by agency officials not processing the alleged 2018 Student Loan Repayment Agreement

---

want of jurisdiction, pursuant to 28 U.S.C. § 1631, the date of filing in the district court would be taken as the date of commencing the action in the Court of Federal Claims. But in this case the district court simply dismissed the suit without ordering a transfer, and 28 U.S.C. § 1631 is not applicable.") (citation omitted). The United States District Court for the District of South Carolina Judge also indicated that "Sanchez's quantum meruit claim is a claim implied in law" and that "[t]he Court of Federal Claims has no jurisdiction over such claims." Sanchez v. Garland, No. 4:24-cv-01149-JD (alteration added). As stated above, plaintiff filed her complaint in this court on March 31, 2025, more than six years after an alleged breach of contract claim would have accrued had the alleged 2018 Student Loan Repayment Agreement been a valid contract, which the court has determined above it is not. Accordingly, the United States District Court for the District of South Carolina Judge's statement in dicta about the statute of limitations does not control the outcome in the above captioned case.

that plaintiff signed, the Tucker Act specifically excludes tort claims from the jurisdiction of this court. <u>See</u> 28 U.S.C. § 1491(a)(1) (2024). Moreover, the United States District Court for the District of South Carolina with jurisdiction over plaintiff's tort claim dismissed plaintiff's tort claim, without prejudice, because plaintiff had provided "no basis for the Court to conclude that any extra-contractual relationship between Sanchez and Defendants created the duty of care Sanchez asserts was breached in this case." <u>Sanchez v. Garland</u>, No. 4:24-cv-01149-JD. In addition to the plain language of the Tucker Act, precedents uniformly indicate that this court does not have jurisdiction to adjudicate claims sounding in tort. <u>See</u> <u>Keene Corp. v. United States</u>, 508 U.S. 200, 214 (1993); <u>Allen v. United States</u>, 88 F.4th 983, 986 (Fed. Cir. 2023); <u>Rick's Mushroom Serv. Inc., v. United States</u>, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("The plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort."); <u>Alves v. United States</u>, 133 F.3d 1454, 1459 (Fed. Cir. 1998); <u>Brown v. United States</u>, 105 F.3d 621, 623 (Fed. Cir.) ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims.") (alteration in original), <u>reh'g denied</u> (Fed. Cir. 1997); <u>Golden Pac. Bancorp v. United States</u>, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), <u>reh'g denied</u>, <u>en banc suggestion declined</u> (Fed. Cir.), <u>cert.</u> denied, 513 U.S. 961 (1994); <u>Otis v. United States</u>, 176 Fed. Cl. at 10; <u>Lambro v. United States</u>, 175 Fed. Cl. 536, <u>appeal dismissed</u>, No. 2025-1825, 2025 WL 2304784 (Fed. Cir. Aug. 11, 2025); <u>Steele v. United States</u>, 175 Fed. Cl. 765, 766 (2025); <u>Lewis v. United States</u>, 175 Fed. Cl. 507, 512 (2025) ("The Tucker Act expressly limits this court's jurisdiction to 'cases not sounding in tort.'" (citing 28 U.S.C. § 1491(a)(1); <u>Rick's Mushroom Serv., Inc. v. United States</u>, 521 F.3d at 1343)); <u>Robinson v. United States</u>, 170 Fed. Cl. 125, 130 (2024); <u>Martin v. United States</u>, 169 Fed. Cl. 342, 345 (2024) ("[I]t is well settled that this Court 'lacks jurisdiction to hear . . . FTCA [Federal Torts Claims Act] claim[s] for allegedly tortious conduct by the United States or its agents because it is specifically barred from hearing tort cases.'") (first and second alterations added; third alteration and omission in original) (quoting <u>Canuto v. United States</u>, 615 F. App'x 951, 953 (Fed. Cir. 2015), and citing 28 U.S.C. § 1491(a)(1)); <u>Walker v. United States</u>, 168 Fed. Cl. 171, 176 (2023); <u>Rancho de Dias Alegres LLC v. United States</u>, 168 Fed. Cl. 139, 144 (2023); <u>Hastings v. United States</u>, 165 Fed. Cl. 1, 5 (2023); <u>Jackson v. United States</u>, 162 Fed. Cl. 282, 291 (2022); <u>Kinney v. United States</u>, 161 Fed. Cl. 644, 649 (2022) ("[T]his court is expressly prohibited from exercising jurisdiction over tort claims.") (alteration added); <u>Turner v. United States</u>, 160 Fed. Cl. 242, 245 (2022); <u>Schneiter v. United States</u>, 159 Fed. Cl. 356, 367 (2022) ("[T]o the extent that plaintiff asserts a tort claim, that claim must be dismissed for lack of subject-matter jurisdiction.") (alteration added); <u>Sin Hang Lee v. United States</u>, 142 Fed. Cl. 722, 728 (2019), <u>aff'd sub nom.</u> <u>Lee v. United States</u>, 819 F. App'x 908 (Fed. Cir. 2020); <u>Kant v. United States</u>, 123 Fed. Cl. 614, 616 (2015) ("[Plaintiff's] claims for 'conversion' and 'fraud' sound in tort and this court lacks jurisdiction to hear tort claims.") (alteration added); <u>Golden v. United States</u>, 118 Fed. Cl. 764, 772 (2014) ("Cases sounding in tort, such as defamation, are expressly excluded by the [Tucker Act].") (alteration added); <u>Cox v. United States</u>, 105 Fed. Cl. 213, 218 ("[P]laintiffs contend that the United States has engaged in tortious conduct, including harassment and persecution, malfeasance, fraud, abuse, and deception . . . . However, the Court of Federal Claims does not possess jurisdiction to entertain claims sounding in tort." (omission added; alteration added)), <u>appeal dismissed</u>,

28

(Fed. Cir. 2012); <u>Jumah v. United States</u>, 90 Fed. Cl. at 607 ("[I]t is well-established that the Court of Federal Claims does not have jurisdiction over tort claims.") (alteration added). Therefore, if plaintiff asserts claims sounding in tort, such claims are not within the jurisdiction of this court as set forth in the Tucker Act and must be dismissed.

Additionally, as indicated above, plaintiff also asserts that her claims fall under the statute at 28 U.S.C. § 1346, which provides:

(a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 7104(b)(1) and 7107(a)(1) of title 41. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

(b)(1) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(a) (2024). Subsection 1346(a)(2), cited by plaintiff in her complaint, discusses only the United States District Courts' concurrent jurisdiction with the United States Court of Federal Claims for actions "not exceeding $10,000 in amount" and "not

sounding in tort." 28 U.S.C. § 1346(a)(2). The statutory language is plain that "the Court of Federal Claims may not adjudicate claims sounding in tort" and that "jurisdiction over tort claims against the United States lies exclusively in federal district courts." <u>Feist v. United States</u>, 148 Fed. Cl. 168, 171 (2019) (citing <u>U.S. Marine, Inc. v. United States</u>, 722 F.3d 1360, 1365-66 (Fed. Cir. 2013)). In sum, count one of plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6) and, to the extent plaintiff tries to state a tort claim in count one, it also must be dismissed for lack of jurisdiction pursuant to RCFC 12(b)(1).

<u>Count Two: Quantum Meruit</u>

Plaintiff's complaint in this court also sets forth, as count two, a <u>quantum</u> <u>meruit</u> claim for recovery. In count two of her complaint, plaintiff alleges that she performed services as a nurse at the BOP which the government accepted from 2017 until 2021 and that "Defendant has received the benefit of the bargain from the professional services and practice productivity of Plaintiff, for which Plaintiff has not been fully compensated per her contractual agreement with Defendants." Defendant, however, argues that this court lacks subject matter jurisdiction over plaintiff's <u>quantum</u> <u>meruit</u> claim because, according to defendant, an implied-in-fact contract cannot exist given that plaintiff alleges in her complaint that an express, written contract existed in her case.

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court <u>sua</u> <u>sponte</u>." <u>Folden v. United States</u>, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing <u>Fanning, Phillips & Molnar v. West</u>, 160 F.3d 717, 720 (Fed. Cir. 1998)), <u>reh'g</u> <u>and</u> <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2004), <u>cert.</u> <u>denied</u>, 545 U.S. 1127 (2005); <u>see</u> <u>also</u> <u>ECC Int'l Constructors, LLC v. Sec'y of Army</u>, 79 F.4th 1364, 1368 (Fed. Cir. 2023) ("'[C]ourts must enforce jurisdictional rules <u>sua</u> <u>sponte</u>, even in the face of a litigant's forfeiture or waiver.'" (quoting <u>Santos-Zacaria v. Garland</u>, 598 U.S. 411, 416 (2023)) (alteration added); <u>St. Bernard Parish Gov't v. United States</u>, 916 F.3d 987, 992-93 (Fed. Cir. 2019) ("[T]he court must address jurisdictional issues, even <u>sua</u> <u>sponte</u>, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case." (citing <u>Foster v. Chatman</u>, 578 U.S. 488, 496 (2016)) (alteration added); <u>Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.</u>, 476 F.3d 1329, 1330 (Fed. Cir. 2007); <u>Haddad v. United States</u>, 152 Fed. Cl. 1, 16 (2021); <u>Fanelli v. United States</u>, 146 Fed. Cl. 462, 466 (2020). The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund

from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); see also Me. Cmty. Health Options v. United States, 590 U.S. 296, 322-23 (2020); United States v. Mitchell, 463 U.S. 206, 216 (1983); Sanford Health Plan v. United States, 969 F.3d 1370, 1378 (Fed. Cir. 2020); Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); Gulley v. United States, 150 Fed. Cl. 405, 411 (2020); Kuntz v. United States, 141 Fed. Cl. 713, 717 (2019). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216 (omission added); see also Chemehuevi Indian Tribe v. United States, 104 F.4th at 1321 ("For jurisdiction to lie under the Tucker Act, "'the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum.'"" (quoting Doe v. United States, 100 F.3d 1576, 1579 (Fed. Cir. 1996) (quoting Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 605, 372 F.2d 1002, 1008 (1967)), reh'g denied and en banc suggestion denied (Fed. Cir. 1997))); United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Allen v. United States, 88 F.4th at 986 ("The Tucker Act does not create substantive rights, so a plaintiff filing in the Court of Federal Claims 'must identify a separate source of substantive law that creates the right to money damages.' . . . '[T]he absence of a money-mandating source [is] fatal to the court's jurisdiction under the Tucker Act.'") (quoting Fisher v. United States, 402 F.3d 1167, 1172-73 (Fed. Cir. 2005) (omission added; alterations in original); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States.") (alteration and omission added); Olson v. United States, 152 Fed. Cl. 33, 40-41 (2021); Jackson v. United States, 143 Fed. Cl. 242, 245 (2019), appeal dismissed, 2020 WL 8254415 (Fed. Cir. 2020). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where

31

"money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004) (alterations and first two omissions added); see also Bell v. United States, 20 F.4th 768, 770 (Fed. Cir. 2021); Samish Indian Nation v. United States, 419 F.3d at 1364; Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. at 208; Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. at 713. A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2); Fed. R. Civ. P. 8(a)(1), (2) (2025); see also Ashcroft v. Iqbal, 556 U.S. at 677-78 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570); Bd. of Supervisors of Issaquena Cnty., Miss. v. United States, 84 F.4th 1359, 1364 (Fed. Cir. 2023) ("To survive a motion to dismiss, 'the complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"") (quoting A & D Auto Sales, Inc. v. United States, 748 F.3d at 1157 (quoting Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. v. Twombly, 550 U.S. at 570)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) (alteration added); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014); see also Hale v. United States, 143 Fed. Cl. 180, 190 (2019). As stated in Ashcroft v. Iqbal, "[a] pleading

that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555) (first alteration added).

A <u>quantum</u> <u>meruit</u> claim is "'[a] claim or right of action for the reasonable value of services rendered.'" <u>United Pac. Ins. Co. v. United States</u>, 464 F.3d 1325, 1329 (Fed. Cir. 2006) (quoting <u>Black's Law Dictionary</u> 1276 (8th ed. 2004)) (alteration in original). There are two types of <u>quantum</u> <u>meruit</u> claims: implied-in-law and implied-in-fact. <u>See</u> <u>Seh Ahn Lee v. United States</u>, 895 F.3d 1363, 1373-74 (Fed. Cir. 2018); <u>Int'l Data Prods. Corp. v. United States</u>, 492 F.3d 1317, 1325 (Fed. Cir. 2007); <u>Allied Home Mortg. Cap. Corp. v. United States</u>, 95 Fed. Cl. 769, 785 (2010). The United States Court of Appeals for the Federal Circuit has stated:

> Recovery in <u>quantum</u> <u>meruit</u> is typically "based on an implied-in-law contract." Because the jurisdiction of the Claims Court [now the United States Court of Federal Claims] over contract claims "extends only to contracts either express or implied in fact, and not to claims on contracts implied in law," that court ordinarily does not entertain <u>quantum</u> <u>meruit</u> claims. However, we have on occasion approved the use of <u>quantum</u> <u>meruit</u> or <u>quantum</u> <u>valebant</u> as a measure of damages for breach of an implied-in-fact contract.

<u>Seh Ahn Lee v. United States</u>, 895 F.3d at 1373-74 (alteration added; internal citations omitted) (quoting <u>Int'l Data Prods. Corp. v. United States</u>, 492 F.3d at 1325; <u>Perri v. United States</u>, 340 F.3d 1337, 1343 (Fed. Cir. 2003), and citing <u>United States v. Amdahl Corp.</u>, 786 F.2d at 393). When distinguishing implied-in-law and implied-in-fact contracts, the United States Court of Appeals for the Federal Circuit also has stated:

> Generally speaking, implied-in-law contracts "impose duties that are deemed to arise by operation of law" in order to prevent an injustice, whereas implied-in-fact contracts are "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding."

<u>Lumbermens Mut. Cas. Co. v. United States</u>, 654 F.3d 1305, 1316 (Fed. Cir. 2011) (quoting <u>City of Cincinnati v. United States</u>, 153 F.3d at 1377). As indicated above, the United States Court of Federal Claims only has jurisdiction over <u>quantum</u> <u>meruit</u> claims based on an implied-in-fact contract. 28 U.S.C. § 1491(a)(1); <u>see</u> <u>also</u> <u>Seh Ahn Lee v. United States</u>, 895 F.3d at 1373-74.

In <u>Trauma Service Group v. United States</u>, the United States Court of Appeals for the Federal Circuit explained:

> To show jurisdiction in the Court of Federal Claims, TSG must show that either an express or implied-in-fact contract underlies its claim. A well-pleaded allegation in the complaint is sufficient to overcome challenges to jurisdiction. Spruill v. Merit Sys. Protection Bd., 978 F.2d 679, 686 (Fed. Cir. 1992). TSG's complaint alleges that an express and, in the alternative, an implied-in-fact contract underlies its claim. This allegation suffices to confer subject matter jurisdiction in the Court of Federal Claims.

Trauma Serv. Grp. v. United States, 104 F.3d at 1325. Therefore, to survive a motion to dismiss for lack of subject matter jurisdiction, plaintiff's complaint need only contain a non-frivolous allegation that an express or implied-in-fact contract underlies her claim. See id.; see also Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1353 (Fed. Cir. 2011) ("We have held that jurisdiction under this provision [28 U.S.C. § 1491(a)(1)] requires no more than a non-frivolous allegation of a contract with the government." (alteration added; emphasis in original) (citing Lewis v. United States, 70 F.3d 597, 602, 604 (Fed. Cir. 1995))); Gould, Inc. v. United States, 67 F.3d 925, 929-30 (Fed. Cir. 1995); Hanlin v. United States, 214 F.3d 1319, 1321 (Fed. Cir. 2000) ("Mr. Hanlin's complaint presents a non-frivolous allegation of the existence of an implied-in-fact contract; this is sufficient to confer jurisdiction in the Court of Federal Claims under 28 U.S.C. § 1491(a)(1)."); Mendez v. United States, 121 Fed. Cl. 370, 378-79 (2015).

In Ms. Sanchez's complaint, she does not explicitly allege that an implied-in-fact contract existed between plaintiff and defendant. Rather, in her filings submitted to this court, plaintiff describes the alleged April 2018 Student Loan Repayment Agreement at issue as an express contract, and in her quantum meruit claim, generally, as an "implied contract" and an implied-in-fact contract. Plaintiff alleges in her complaint that there is a basis for her quantum meruit claim because plaintiff conferred on the government her services as a nurse, which the government accepted, from 2017 until 2021, and "Plaintiff has not been fully compensated per her contractual agreement with Defendants." In her response to defendant's motion to dismiss, plaintiff also tries to explain that she "has alleged an express or implied contract with the government when she provided proof that she was offered and accepted SLRP agreements and performed the contract as presented to her." Further, in her response brief, plaintiff, quoting Seh Ahn Lee v. United States, 895 F.3d at 1366, argues that this court has jurisdiction over her quantum meruit claim "when a contractor provides goods or services in good faith under an express contract that is later rescinded for invalidity." Plaintiff also asserts in her response brief that "at the very least, the 2018 SLRP agreement provided by BOP to Plaintiff, is an [i]mplied contract in fact as Defendant made the offer to and accepted the performance of Plaintiff and then claimed the agreement was invalid." (alteration added). Additionally, as discussed more fully below, plaintiff also argues in her response brief that she "is entitled to compensation as decided in Int'l Data Prods. Corp. v. United States[, 492 F.3d 1317 (Fed. Cir. 2007),] based on Defendant's claims that the agreement is invalid." (alteration added). Finally, citing United States v. Amdahl Corp, 786 F.2d 387, plaintiff further argues in her response brief that she is "entitled to recovery for the services she provided Defendant and the agreement presented to her was deemed unenforceable by the government." Based on the allegations in plaintiff's complaint and, as discussed more

fully below, the fact that plaintiff attempts to model her <u>quantum</u> <u>meruit</u> theory of recovery on the <u>International Data Products Corp. v. United States</u> and <u>United States v. Amdahl Corp.</u> cases, plaintiff may be trying to allege that an implied-in-fact contract underlies her <u>quantum</u> <u>meruit</u> claim.[14] If so, this allegation is sufficient to confer subject matter jurisdiction in the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1). <u>See</u> <u>Seh Ahn Lee v. United States</u>, 895 F.3d at 1374 ("Because the plaintiffs seek to model their <u>quantum</u> <u>meruit</u> theory of relief on the <u>Amdahl</u> case, we treat their argument as being based on an implied-in-fact contract theory over which the Claims Court has jurisdiction.").

With respect to defendant's assertion that an implied-in-fact contract cannot exist in plaintiff's case regarding a 2018 agreement because plaintiff "alleges" an express contract in her complaint, the United States Court of Appeals for the Federal Circuit has stated that "the existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract." <u>Seh Ahn Lee v. United States</u>, 895 F.3d at 1370 (quoting <u>Bank of Guam v. United States</u>, 578 F.3d at 1329); <u>see also</u> <u>Bitmanagement Software GmBH v. United States</u>, 989 F.3d 938, 949 (Fed. Cir. 2021); <u>Peter v. United States</u>, 6 Cl. Ct. 768, 780 (1984) ("The rule that the existence of an express contract preempts an implied contract has full effect only when the parties to both contracts are the same."). It is not a question of whether one or both types of contracts were alleged by a plaintiff, rather what type of contract did or did not come into existence based on the facts presented to the court. In the case currently before this court, as explained above, no express contract came into existence between plaintiff and defendant in 2018 that would preclude the existence of an implied-in-fact contract between plaintiff and defendant. Moreover, as indicated above, a plaintiff may allege an express contract and an implied-in-fact contract in the alternative. <u>See</u> RCFC 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); <u>see</u> <u>also</u> <u>Trauma Serv. Grp. v. United States</u>, 104 F.3d at 1325 ("TSG's [plaintiff's] complaint alleges that an express and, in the alternative, an implied-in-fact contract underlies its claim. This allegation suffices to confer subject matter jurisdiction in the Court of Federal Claims.") (alteration added). Therefore, the fact that plaintiff alleges an express contract in her

---

[14] As discussed above, in plaintiff's previous action in the United States District Court for the District of South Carolina, the United States District Court for the District of South Carolina Judge determined that "Sanchez's quantum meruit and contract claims are the same" because "the 'source of the rights upon which' Sanchez bases her claims is exclusively the purported agreement." <u>Sanchez v. Garland</u>, No. 4:24-cv-01149-JD. The United States District Court for the District of South Carolina Judge also stated in a footnote: "The Court has concluded, <u>supra</u>, that Sanchez has only one contract claim. But even if that were not so, Sanchez's quantum meruit claim is a claim implied in law. The Court of Federal Claims has no jurisdiction over such claims." <u>Id.</u> (citing <u>Hercules Inc. v. United States</u>, 516 U.S. at 423). The United States District Court for the District of South Carolina Judge did not, however, expand on his conclusion that plaintiff's <u>quantum</u> <u>meruit</u> claim is based on an implied-in-law contract, rather than an implied-in-fact contract.

complaint does not preclude the court from considering plaintiff's alternative allegation that an implied-in-fact contract came into existence and from determining that plaintiff's claim can be considered jurisdictionally proper in this court.

Although defendant moved to dismiss count two of plaintiff's complaint, plaintiff's quantum meruit claim, for lack of subject matter jurisdiction, this court may, in its discretion, consider a motion to dismiss for lack of subject matter jurisdiction as one for failure to state a claim upon which relief can be granted. See Bitscopic, Inc. v. United States, 166 Fed. Cl. 677, 696 (2023) ("This Court may therefore convert a motion to dismiss under Rule 12(b)(1) to a motion to dismiss under Rule 12(b)(6), particularly where, as here, the parties have an opportunity to be heard regarding the alternative ground for dismissal.") (citing Brown v. United States, 22 F.4th 1008, 1011-12 (Fed. Cir. 2022)); see also Robertson v. United States, 115 Fed. Cl. 234, 240-41 ("In its discretion, the court may convert defendant's motion into a RCFC 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted."), appeal dismissed, 556 F. App'x 966 (Fed. Cir. 2014). Moreover, "[t]he trial court may dismiss sua sponte under Rule 12(b)(6), provided that the pleadings sufficiently evince a basis for that action." Anaheim Gardens v. United States, 444 F.3d 1309, 1315 (Fed. Cir. 2006) (alteration added); see also M.R. Pittman Grp., LLC v. United States, 68 F.4th 1275, 1282 (Fed. Cir. 2023); Jolly v. United States, 167 Fed. Cl. 249, 254 (2023). As discussed above, plaintiff's complaint set forth a quantum meruit claim for recovery. The parties in the above captioned case have had a full opportunity to brief the issues concerning plaintiff's quantum meruit claim, including whether an implied-in-fact contract existed between plaintiff and defendant in 2018, and the merits of plaintiff's quantum meruit claim were discussed at the oral argument regarding this case. In this case, the parties have had an opportunity to be heard with respect to plaintiff's quantum meruit claim and the court fully considers the case and can proceed to consider whether plaintiff's quantum meruit claim states a claim for which relief can be granted in this court.

The requirements to form an implied-in-fact contract are the same as those to form an express contract. See Hanlin v. United States, 316 F.3d at 1328; Trauma Serv. Grp. v. United States, 104 F.3d at 1325; Calapristi v. United States, 156 Fed. Cl. 13, 17 (2021), aff'd, No. 2022-1080, 2022 WL 16645786 (Fed. Cir. Nov. 3, 2022); Beach v. United States, 226 U.S. 243, 260 (1912) ("[T]he want of statutory authority on the part of the [defendant] to represent the government in making an express contract is equally fatal to the theory of an implied contract. For it is fundamental that he who is without authority to bind his principal by an express contract cannot be held to have done so by implication.") (alterations added). "An implied-in-fact contract with the federal government requires: (1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) 'actual authority' on the part of the government's representative to bind the government in contract." Calapristi v. United States, 156 Fed. Cl. at 17 (citing Pac. Gas & Elec. v. United States, 3 Cl. Ct. 329, 339 (1983), aff'd, 738 F.2d 452 (Fed. Cir. 1984)). Therefore, if the elements to create an express contract are not satisfied, then an implied-in-fact contract cannot have come into existence. See Hanlin v. United States, 316 F.3d at 1328. Moreover, "[p]laintiff has the burden to prove the existence of an implied-in-

fact contract." Id. (alteration added); see also Pac. Gas & Elec. v. United States, 3 Cl. Ct. at 339.

As indicated above, plaintiff tries to cite International Data Products Corp. v. United States, 492 F.3d at 1325-26, to support her quantum meruit claim that she should be compensated based on an alleged implied-in-fact contract. Plaintiff states that she is "entitled to compensation as decided in Int'l Data Prods. Corp. v. United States based on Defendant's claims that the agreement is invalid." The Federal Circuit in International Data Products Corp. v. United States explained that "'[w]here a benefit has been conferred by the contractor on the government in the form of goods or services, which it accepted, a contractor may recover at least on a quantum valebant or quantum meruit basis for the value of the conforming goods or services received by the government prior to the rescission of the contract for invalidity.'" Int'l Data Prods. Corp. v. United States, 492 F.3d at 1325-26 (alteration in original; internal citations omitted) (quoting United Pac. Ins. Co. v. United States, 464 F.3d at 1329-30). The International Data Products Corp. v. United States case, however, does not support plaintiff's position. First, although the International Data Products Corp. v. United States case addresses the recission of a contract for invalidity, in Ms. Sanchez's case, as explained above, no contract existed in 2018 between plaintiff and defendant that could have been rescinded for invalidity. Second, plaintiff's claim that she is entitled to the value of services she conferred on the government by performing services as a nurse at the BOP between 2017 and 2021 does not support plaintiff's quantum meruit claim because plaintiff was paid a salary by the BOP to compensate her for her nursing services from 2017 until she voluntarily resigned from the BOP on September 9, 2021. Plaintiff's performance of her nursing duties was tied to her employment agreement, not related to a Student Loan Repayment Agreement, which are separate and distinct agreements. See 5 U.S.C. § 5379(f) ("Any benefit under this section [titled "Student loan repayments"] shall be in addition to basic pay and any other form of compensation otherwise payable to the employee involved.") (alteration added). This is made evident as plaintiff began working for the BOP on January 22, 2017, but did not sign any student loan repayment agreement until April 18, 2018 at the earliest.

In her response to defendant's motion to dismiss, plaintiff also quotes, without citing, Baltimore & Ohio Railroad Co. v. United States, 261 U.S. 592 (2023), for the proposition that "[a]n agreement implied in fact is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" See Baltimore & O. R. Co. v. United States, 261 U.S. at 597. Plaintiff omits, however, that the United States Supreme Court in Baltimore & Ohio Railroad Co. v. United States continued that "[s]uch an agreement will not be implied unless the meeting of minds was indicated by some intelligible conduct, act or sign." Id. at 598 (alteration added). In the case currently before the court, plaintiff has not pled or offered evidence that any individual with authority to enter contracts on behalf of the government signed, approved, or otherwise demonstrated acceptance of the alleged April 2018 Student Loan Repayment Agreement on behalf of defendant. In plaintiff's case, there was no "intelligible conduct, act or sign," that evidenced a "meeting of minds" between plaintiff and a government official with authority to bind the government in contract. See Baltimore

& O. R. Co. v. United States, 261 U.S. at 598; see also Calapristi v. United States, 156 Fed. Cl. at 17 ("An agreement will not be implied 'unless the meeting of minds is indicated by some intelligible conduct, act or sign.'") (quoting Baltimore & O. R. Co. v. United States, 261 U.S. at 598)); Trauma Serv. Grp., Ltd. v. United States, 33 Fed. Cl. 426, 431 (1995), aff'd, 104 F.3d 1321 (Fed. Cir. 1997) ("No contract, express or implied in fact, arises upon the government's mere acceptance of benefits, absent affirmative authority of the contracting officer to so bind the government.") (citing Merritt v. United States, 267 U.S. 338, 341 (1925)). Moreover, in plaintiff's case, the fact that the government did not make any payment on plaintiff's behalf in 2018 is further evidence that no meeting of minds occurred between plaintiff and defendant with respect to the alleged April 2018 Student Loan Repayment Agreement.

Plaintiff further quotes United States v. Amdahl Corp., 786 F.2d at 393, 395, to argue that even if a contract is unenforceable against the government because it was not properly authorized, the government must still pay for the services accepted under it, "even where 'an award is plainly or palpably illegal' and 'made contrary to statutory or regulatory requirements because of some action or statement by the contractor.'" (quoting United States v. Amdahl Corp., 786 F.2d at 393, 395). The United States v. Amdahl Corp. case also is distinguishable from the case now before this court because the government has never recognized the existence of a 2018 contract in this case, as discussed above. The United States Court of Appeals for the Federal Circuit in United Pacific Insurance Co. v. United States, 464 F.3d at 1333-34, explained that "Amdahl speaks to the situation in which the government receives the goods or services for which it contracted, but then seeks to avoid payment by arguing that the underlying contract was unlawful." United Pac. Ins. Co. v. United States, 464 F.3d at 1334. In the United States v. Amdahl Corp. case, there was a contract actually issued by a contracting officer, and the government "receive[d] the goods or services for which it contracted" but the contract was subsequently rescinded for invalidity because its terms conflicted with a statute and regulation. See United Pac. Ins. Co. v. United States, 464 F.3d at 1333-34 (alteration added). In contrast, in plaintiff's case, there was no Student Loan Repayment Agreement issued by or signed by a person with authority to bind the government in 2018 and, thus, there was no contract to rescind for invalidity. In fact, there is contrary evidence to plaintiff's allegation of an implied-in-fact contract because no payment pursuant to the alleged April 2018 Student Loan Repayment Agreement was made by defendant in 2018, nor did defendant seek "to avoid payment by arguing that the underlying contract was unlawful." See United Pac. Ins. Co. v. United States, 464 F.3d at 1333-34. Moreover, the services plaintiff provided to the BOP were pursuant to her separate employment contract with the BOP, which, as discussed above, was an independent and distinct agreement from any Student Loan Repayment Agreement for which plaintiff was compensated.

Plaintiff's quantum meruit claim, with respect to the alleged April 2018 Student Loan Repayment Agreement, which plaintiff signed, but which was not signed by an individual with authority to bind the United States, fails for the same reasons plaintiff's breach of express contract claim fails. As the requirements to form an implied-in-fact contract are largely the same as those to form an express contract, plaintiff must demonstrate mutual assent by a person with actual authority to bind the government to a

contract, which plaintiff has failed to do. See Hanlin v. United States, 316 F.3d at 1328; Calapristi v. United States, 156 Fed. Cl. at 17. In sum, plaintiff has not alleged any facts in her complaint to demonstrate that a government official with authority to bind the government entered into the alleged April 2018 Student Loan Repayment Agreement with plaintiff. Thus, plaintiff has failed to carry her burden to allege and establish that a government official with actual authority to contract on behalf of the government entered into either an express or an implied-in-fact contract with plaintiff in 2018 with respect to the alleged April 2018 Student Loan Repayment Agreement. Because there was no implied-in-fact contract, plaintiff's quantum meruit claim fails to state a claim upon which relief can be granted and must be dismissed pursuant to RCFC 12(b)(6).

Miscellaneous Arguments

Plaintiff also introduces a seemingly new claim, not raised in her complaint filed in this court, but raised in her response to defendant's motion to dismiss, that defendant breached the implied duty of good faith and fair dealing by refusing to start the service clock after plaintiff signed the alleged April 2018 Student Loan Repayment Agreement on April 18, 2018. According to plaintiff, since defendant did not inform plaintiff that the alleged April 2018 Student Loan Repayment Agreement that she signed "was not being honored or properly processed," her expectation of student loan repayment beginning in 2018 was "destroyed," and, therefore, defendant breached the implied duty of good faith and fair dealing. Plaintiff concurrently tries to argue that "[t]o the extent Defendants argue there was no 2018 agreement between Plaintiff and Defendant, then an implied contract exists in which Defendant owed a duty of good faith and fair dealing with respect to the 2018 agreement." (alteration added).

As an initial matter, claims presented for the first time in a responsive briefing, but not included in a complaint, are generally not considered by a court. See McGrath v. United States, 85 Fed. Cl. 769, 772 (2009) (refusing to consider a claim that did "not appear in the Complaint"); see also Sergent's Mech. Sys., Inc. v. United States, 157 Fed. Cl. 41, 55 (2021) ("Although [plaintiff] attempts to remedy its omission(s) in its motion briefing, a party cannot revise its operative complaint in that manner.") (alteration added) (citing McGrath v. United States, 85 Fed. Cl. at 772; and Jackson v. United States, 156 Fed. Cl. 738, 743 n.8 (2021)); Michels v. United States, 72 Fed. Cl. 426, 432 (2006) ("The Court is not inclined to permit the introduction of a new allegation in plaintiff's Opposing Brief."). It was improper for plaintiff to have tried to add a claim for breach of the implied duty of good faith and fair dealing for the first time in her responsive briefing. Moreover, "[a] cause of action based on the implied duty of good faith and fair dealing is simply a specific breach-of-contract claim" and the existence of such a claim "'depends on the existence of an underlying contractual relationship.'" Christy, Inc. v. United States, 141 Fed. Cl. 641, 663 (2019) (alteration added) (quoting Scott Timber Co. v. United States, 692 F.3d 1365, 1372 (Fed. Cir. 2012)). In plaintiff's case, as explained above, plaintiff has not demonstrated "the existence of an underlying contractual relationship" between the parties regarding the alleged April 2018 Student Loan Repayment Agreement. Therefore, defendant could not have breached the implied duty of good faith and fair dealing under the alleged April 2018 Student Loan Repayment Agreement because there was no

contract to which the duty could attach. <u>See</u> <u>Scott Timber Co. v. United States</u>, 692 F.3d at 1372 (finding that defendant "could not have breached the covenant of good faith and fair dealing by its pre-award conduct because the covenant did not exist until the contract was signed").

Additionally, in her response to defendant's motion to dismiss, plaintiff makes the following request:

> To the extent this court determines any of Plaintiff's claims fail due to curable pleading Defects, such as removing claims of "unjust enrichment" or more specifically pleading all facts relevant to breach of contract, express or implied, or breach of implied in fact contract, Plaintiff respectfully requests the right to amend the pleading.

Defendant opposes plaintiff's request for leave to amend because, according to defendant, "neither a claim for breach of the duty of good faith and fair dealing, nor her other proposed amendments would address, rebut, or cure her complaint's fatal jurisdictional deficiencies." Pursuant to RCFC 15(a), once twenty-one days after service of a responsive pleading has passed, as is true in the case currently before the court, "a party may amend its pleading only with the opposing party's written consent or the court's leave." RCFC 15(a) (2024). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (alteration added); <u>see</u> <u>also</u> <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 330, 330 (1971) ("It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."); <u>Tamerlane, Ltd. v. United States</u>, 550 F.3d 1135, 1147 (Fed. Cir. 2008) ("'The decision to grant or deny a motion for leave to amend . . . lies within the sound discretion of the trial court.'" (quoting <u>Insituform Techs., Inc. v. Cat Contracting, Inc.</u>, 385 F.3d 1360, 1372 (Fed. Cir. 2004)) (omission in original)); <u>Datascope Corp. v. SMEC, Inc.</u>, 962 F.2d 1043, 1045 (Fed. Cir. 1992) ("The grant or denial of leave to amend the complaint is within the discretion of the district court, and will be reversed only for an abuse of discretion.") (internal citation omitted); <u>Mitsui Foods, Inc. v. United States</u>, 867 F.2d 1401, 1403 (Fed. Cir. 1989) ("It is well established that the grant or denial of an opportunity to amend pleadings is within the discretion of the trial court.").

Although RCFC 15 "is liberally construed, and courts generally grant leave to amend if there is no 'apparent or declared reason' not to permit amendment," <u>Sonoran Tech. & Prof'l Servs., LLC v. United States</u>, 133 Fed. Cl. 401, 403 (2017) (quoting <u>A & D Auto Sales, Inc. v. United States</u>, 748 F.3d at 1158), a request for leave to amend should not be futile. In <u>A & D Auto Sales, Inc. v. United States</u>, the United States Court of Appeals for the Federal Circuit recognized reasons to deny leave to amend to include, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." <u>A & D Auto Sales, Inc. v. United States</u>, 748 F.3d at 1158 (quoting <u>Foman v. Davis</u>, 371 U.S. at 182); <u>see also</u> <u>Te-Moak Bands of W. Shoshone Indians v. United States</u>, 948 F.2d 1258, 1260 (Fed. Cir. 1991) (quoting <u>Foman v. Davis</u>, 371 U.S. at 182); <u>Zenith Radio Corp. v. Hazeltine</u>

Research, Inc., 401 U.S. at 330-31 ("[I]n deciding whether to permit such an amendment, the trial court was required to take into account any prejudice that Zenith [the nonmovant] would have suffered as a result . . . .") (alterations and omission added); Shell Oil Co. v. United States, 896 F.3d 1299, 1316 (Fed. Cir. 2018) ("'[A]mendments are not allowed where they result in undue delay or prejudice.'" (alteration added) (quoting Cencast Servs., L.P. v. United States, 729 F.3d 1352, 1363 (Fed. Cir. 2013))); Sonoran Tech. & Prof'l Servs., LLC v. United States, 133 Fed. Cl. at 403 ("The Court should deny leave to amend if there is evidence of delay, bad faith, repeated failure to correct a complaint's deficiencies, undue prejudice to the opposing party, or if the amendment would be futile."). Moreover, "'[t]he existence of any one of these criteria is sufficient to deny a motion to amend, the theory being that the amendment would not be necessary to serve the interests of justice under such circumstances.'" Christofferson v. United States, 77 Fed. Cl. 361, 363 (2007) (alteration added) (quoting Spalding & Son, Inc. v. United States, 22 Cl. Ct. 678, 680 (1991)).

"When futility is asserted as a basis for denying a proposed amendment, courts do not engage in an extensive analysis of the merits of the proposed amendments." St. Paul Fire & Marine Ins. Co. v. United States, 31 Fed. Cl. 151, 155 (1994); see also Wolfing v. United States, 163 Fed. Cl. 135, 149 (2022); Mason v. United States, 156 Fed. Cl. 614, 617 (2021). Instead, "courts simply decide whether a party's proposed amendment is facially meritless and frivolous, i.e., 'Where futility is proposed as a basis for denying amending a complaint, courts will discern whether a pleading is frivolous and insufficient on its face or has been adequately addressed in the prior complaint.'" Id. (emphasis in original) (quoting Alaska v. United States, 15 Cl. Ct. 276, 280 (1988)). "This court has found that granting leave to amend a pleading would be futile if the amended complaint would fail to state a claim upon which relief can be granted or if the proposed amendment would fail for lack of jurisdiction or is 'facially meritless and frivolous.'" Chapman v. United States, 130 Fed. Cl. 216, 219 (2017) (quoting Smith v. United States, 120 Fed. Cl. 455, 458 (2015)) (citation omitted); see also Diaz v. United States, 141 Fed. Cl. 161, 166 (2018) ("Additionally, '[a] claim that is barred by the statute of limitations would be futile.'" (alteration in original) (quoting Chapman v. United States, 130 Fed. Cl. at 219)); Godfrey v. United States, 131 Fed. Cl. 111, 123 (2017); Marchena v. United States, 128 Fed. Cl. 326, 330 (2016) ("A proposed amendment is futile if it would not survive a motion to dismiss."), aff'd, 702 F. App'x 988 (Fed. Cir. 2017); Meyer Grp., Ltd. v. United States, 115 Fed. Cl. 645, 650 (2014) ("A counterclaim must contain facts sufficient to state a claim to relief that is plausible on its face to survive a motion to dismiss under Rule 12(b)(6)." (internal quotations omitted)); Shoshone Indian Tribe of the Wind River Reservation, Wyo. v. United States, 71 Fed. Cl. 172, 176 (2006) ("A motion to amend may be deemed futile if a claim added by the amendment would not withstand a motion to dismiss."). As the United States Court of Appeals for the Federal Circuit has held:

> When a party faces the possibility of being denied leave to amend on the ground of futility, that party must demonstrate that its pleading states a claim on which relief could be granted, and it must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion.

Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d 1339, 1354-55 (Fed. Cir. 2006); see also Taino Constr. Grp., LLC v. United States, 177 Fed. Cl. 730, 749 (2025) (quoting Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d at 1354-55); Dixon v. United States, 158 Fed. Cl. 80, 85 (2022) (citing Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d at 1354-55).

As explained in detail above, even taking the facts alleged in plaintiff's complaint as true, plaintiff has failed to state a claim upon which relief can be granted. Upon review of the record before the court, the court projects that plaintiff's request to amend her complaint would be futile because both of plaintiff's claims in the case currently before the court are based on an alleged April 2018 Student Loan Repayment Agreement, a copy of which is in the record before the court, and plaintiff has not raised or offered any supportive facts in her complaint or in her filings in this court, even when considering her responsive pleading and her counsel's statements at the oral argument in this case, that there was any contract, either express or implied-in-fact, that was entered into by a government official authorized to enter into a Student Loan Repayment Agreement with Ms. Sanchez on behalf of the government in 2018. Moreover, plaintiff's request to amend her complaint would be futile because, as discussed above, even if the alleged April 2018 Student Loan Repayment Agreement could have been considered a valid contract, which it cannot, plaintiff's breach of contract claim would be barred by the statute of limitations, as discussed earlier in this Opinion. See Chapman v. United States, 130 Fed. Cl. at 219 ("A claim that is barred by the statute of limitations would be futile."). Accordingly, plaintiff has not proffered any facts to support that an amended pleading could survive a dispositive, future pre-trial motion. See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 at 1354-55; see also Taino Constr. Grp., LLC v. United States, 177 Fed. Cl. at 749.

Finally, in plaintiff's response to defendant's motion to dismiss, plaintiff also suggests that defendant's motion to dismiss "includes allegations, statements and arguments far beyond the allegations in the complaint and integral, not to Plaintiff's claims, but [to] Defendant's defense" regarding the "purpose and the alleged requirements to receive benefits" under the Student Loan Repayment Program. (alteration added). Plaintiff argues that the appendix to defendant's motion to dismiss introduces new evidence and that "Plaintiff is not privy to this testimony and has had no opportunity to cross examine or check the validity in any way." Plaintiff states that she was "presented only with the written service agreement, and not the BOP policy nor the three tiered process Defendant cites in its motion to dismiss." Plaintiff continues:

The facts that Defendant advances require testimony and evidence and discovery, and should be included in a Motion for Summary Judgement after a discovery period; however, because Defendant has advanced extrinsic evidence in support of the Motion to Dismiss, far beyond the four corners of the complaint that referenced SLRP agreements signed by her [plaintiff], Plaintiff must submit additional extrinsic evidence as well.

(alteration added).

Although pursuant to RCFC 12(d) "[i]f, on a motion under RCFC12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56," RCFC 12(d) (2024) (alteration added), when reviewing a motion to dismiss for failure to state a claim, although the court primarily considers the allegations in a complaint, the court may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record. See Dimare Fresh, Inc. v. United States, 808 F.3d 1301, 1306 (Fed. Cir. 2015), cert. denied, 579 U.S. 902 (2016); see also Cotter Corp., N.S.L. v. United States, 127 F.4th at 1366; Ute Indian Tribe of the Uintah & Ouray Indian Rsrv. v. United States, 99 F.4th 1353, 1364 (Fed. Cir. 2024); Amgen Inc. v. Sanofi, 872 F.3d 1367, 1378 (Fed. Cir. 2017) ("A court may take judicial notice of a fact only when it is either 'generally known' or 'accurately and readily [discernible] from sources whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b))) (alteration in original), cert. denied, 586 U.S. 1068 (2019); Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325 (Fed. Cir. 2016) ("The Supreme Court has ruled that a court 'must consider the complaint in its entirety, . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007))) (omission in original); B.V.D. Licensing Corp. v. Body Action Design, Inc., 846 F.2d 727, 728 (Fed. Cir. 1988) ("Courts may take judicial notice of facts of universal notoriety, which need not be proved, and of whatever is generally known within their jurisdictions.") (citing Brown v. Piper, 91 U.S. 37, 42 (1875)). The Federal Rules of Evidence state that the "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) (2025).

Although few exhibits were attached to plaintiff's complaint,[15] plaintiff attached the following five documents to her response to defendant's motion to dismiss as additional factual information she apparently felt were relevant to plaintiff's claim: (1) "Attachment A Sanchez 2018 SLRP Inquiries," which contains emails between plaintiff and Human Resources Specialist Beth Graham concerning the alleged April 2018 Student Loan Repayment Agreement, (2) "Attachment B Sanchez 2018 SLRP," which is a copy of the alleged April 2018 Student Loan Repayment Agreement, (3) "Attachment C Sanchez 2019 SLRP," which is a copy of the January 2019 Student Loan Repayment Agreement, (4) "Attachment D Sanchez Appeals," which is a copy of the "Request for Compromise of Claim for Erroneous Pay" form that plaintiff submitted to the BOP on January 6, 2022, and (5) "Attachment E Decision Email," which is a copy of the memorandum that BOP

---

[15] As discussed above, the only exhibits attached to plaintiff's complaint are the United States Court of Federal Claims' Civil Cover Sheet and a photocopy of an envelope showing that plaintiff's complaint was received by the United States Court of Federal Claims on March 31, 2025.

Regional Director Lothrop issued on June 14, 2022, denying plaintiff's Request for Compromise of Claim for Erroneous Pay.

In a footnote in its reply brief, defendant argues that it "relied solely upon the materials attached to our motion to dismiss the complaint, which are items subject to judicial notice or matters of public record." Defendant then identifies those "materials attached to" defendant's motion to dismiss as "Ms. Sanchez's district court decision, two agreements with accompanying records maintained by BOP human resources, memoranda provided by Ms. Sanchez to support her position in district court, and email correspondence provided by Ms. Sanchez to support her position in district court[]." (alteration added). More specifically, the items included by defendant in the appendix with its motion to dismiss are (1) the judicial order by the United States District Court for the District of South Carolina, (2) Program Statement 3530.02, (3) the alleged April 2018 Student Loan Repayment Agreement,[16] (4) the 2018 HR Pre-Approval Document, (5) the January 2019 Student Loan Repayment Agreement,[17] (6) the 2019 HR Approval Document, (7) the memorandum that BOP Regional Director Lothrop issued on June 14, 2022, denying plaintiff's Request for Compromise of Claim for Erroneous Pay,[18] (8) plaintiff's resignation letter, and (9) email correspondences between plaintiff and various BOP human resources representatives. Defendant asserts that it "did not rely upon any testimony or other documents that Ms. Sanchez did not have access to."

Given that many of the documents plaintiff submitted with her response to defendant's motion to dismiss are the same as those documents submitted by defendant with its motion to dismiss, those documents do not seem to raise a dispute between the parties as to their authenticity and both parties have had access to those documents. Moreover, the judicial order issued by a Judge of the United States District Court for the District of South Carolina on the case Ms. Sanchez previously filed in United States District Court for the District of South Carolina is a matter of public record and may be properly considered when reviewing defendant's motion to dismiss. See Fed. R. Evid. 201(b); see also Dimare Fresh, Inc. v. United States, 808 F.3d at 1306; Pucciariello v.

---

[16] The court notes that the copy of the alleged April 2018 Student Loan Repayment Agreement that defendant submitted in the appendix with its motion to dismiss is identical to the "Attachment B Sanchez 2018 SLRP" that plaintiff attached to her response to defendant's motion to dismiss.

[17] The court notes that the January 2019 Student Loan Repayment Agreement that defendant submitted in the appendix with its motion to dismiss is identical to the "Attachment C Sanchez 2019 SLRP" that plaintiff attached to her response to defendant's motion to dismiss.

[18] The court notes that the June 14, 2022 memorandum denying plaintiff's "Request for Compromise of Erroneous Pay" form, issued by BOP Regional Director Lothrop, that defendant submitted in the appendix with its motion to dismiss is identical to the "Attachment E Decision Email" that plaintiff attached to her response to defendant's motion to dismiss.

United States, 116 Fed. Cl. 390, 401 (2024) (when deciding a 12(b)(6) motion to dismiss, "[t]he court may consider public court documents filed in [plaintiff's] district court action, including [plaintiff's] complaint and the district court's order dismissing that lawsuit") (alterations added). The alleged April 2018 Student Loan Repayment Agreement, the January 2019 Student Loan Repayment Agreement, plaintiff's "Request for Compromise of Claim for Erroneous Pay" form, and the BOP memorandum denying waiver of plaintiff's debt were each referenced in plaintiff's complaint and integral to plaintiff's claims, and, therefore, properly can be considered when reviewing defendant's motion to dismiss. See Dimare Fresh, Inc. v. United States, 808 F.3d at 1306; see also Fredericksburg Non-Profit Hous. Corp. v. United States, 113 Fed. Cl. 244, 255 n.19 (2013) ("The Use Agreement, POA [Plan of Action], and HUD's July letter are each integral to plaintiff's claims and expressly referenced by the amended complaint. The plaintiff's February letter is integral to plaintiff's claim and indirectly referenced by the complaint. The authenticity of these documents, which have been provided by the parties, has not been questioned. The ability of the court to consider documents integral to the claim under Rule 12(b)(6) has been recognized by several circuits . . . and the court does so here without converting the motion to one for summary judgment.") (alteration and omission added), aff'd, 579 F. App'x 1004, (Fed. Cir. 2014). Given that plaintiff alleges in her complaint that defendant breached the alleged April 2018 Student Loan Repayment Agreement by failing to "properly process Plaintiff's signed agreement," both the 2018 HR Pre-Approval Document and the 2019 HR Approval Document are integral to plaintiff's claims because those documents demonstrate the procedures by which the BOP processes Student Loan Repayment Agreements. Moreover, defendant states that both the 2018 HR Pre-Approval Document and the 2019 HR Approval Document would have been available to plaintiff while employed by the BOP had she requested those documents from the BOP Human Resource Management Division or accessed her BOP official personnel file, as well as now that she is reemployed by the BOP. The 2018 HR Pre-Approval Document and the 2019 HR Approval Document are integral to plaintiff's claims, part of plaintiff's official personnel records, and, therefore, properly can be considered when reviewing defendant's motion to dismiss. See Dimare Fresh, Inc. v. United States, 808 F.3d at 1306. Plaintiff's resignation letter, which also was quoted in the United States District Court for the District of South Carolina judicial order, and the email correspondences between plaintiff and BOP human resources representatives, including Human Resources Specialist Beth Graham, also are, as defendant notes, part of plaintiff's official personnel records and plaintiff was always either the sender or the recipient of such correspondences referenced in the submissions to this court. Moreover, plaintiff does not dispute the contents or the authenticity of those documents. The resignation letter and email correspondences, therefore, can be considered when considering defendant's motion to dismiss without converting the motion to dismiss into a motion for summary judgment. See Fed. R. Evid. 201(b); see also Amgen Inc. v. Sanofi, 872 F.3d at 1378; Dimare Fresh, Inc. v. United States, 808 F.3d at 1306.

A major concern of plaintiff appears to be defendant's references to Program Statement 3530.02 in defendant's motion to dismiss and reliance on it in defendant's motion to dismiss. In her response to defendant's motion to dismiss, plaintiff argues that "Defendant explains the Student Loan Repayment Program (SLRP), its purpose and the

alleged requirements to receive benefits," but that neither "the BOP policy nor the three tiered process" for the approval of Student Loan Repayment Agreements were presented to plaintiff when she signed either the alleged April 2018 Student Loan Repayment Agreement or the January 2019 Student Loan Repayment Agreement. Defendant, in its motion to dismiss, characterizes Program Statement 3530.02 as "publicly available." Although the BOP maintains a public-facing website on which the BOP publishes guidance documents, and which the BOP designates as Program Statements, Program Statement 3530.02, currently, no longer appears on the BOP's public-facing website.[19] Defendant's attorney of record, as an officer of the court appearing for defendant in plaintiff's case, included Program Statement 3530.02 in defendant's submission to this court and has represented it as the accurate, applicable version of Program Statement 3530.02 at the times relevant to plaintiff's case. Moreover, at oral argument in plaintiff's case, defendant's attorney of record represented to the court that the copy of Program Statement 3530.02 in the record before the court was at the time of the facts relevant to plaintiff's claims available to Ms. Sanchez via the BOP's intranet. The court also notes that, at oral argument on defendant's motion to dismiss in this case, defendant stated that Program Statement 3530.02 "still is available via the Bureau of Prisons intranet" and "is available currently to Ms. Sanchez because she's employed [by the BOP] again." (alteration added). Furthermore, Program Statement 3530.02 appears to be integral to plaintiff's claim because it details the process pursuant to which the BOP may approve Student Loan Repayment Agreements and, as noted above, plaintiff's complaint alleges that defendant failed to "properly process Plaintiff's signed agreement." As indicated above, however, plaintiff argues that she "has had no opportunity to cross examine or check the validity" of Program Statement 3530.02, although the court notes that, as represented by defendant's counsel of record, plaintiff could have accessed, and may still have access to, Program Statement 3530.02 as an employee of the BOP.

Nonetheless, Even without considering Program Statement 3530.02, the court finds that plaintiff has failed to carry her burden to allege and prove that a government official with actual authority to contract on behalf of the government entered into the alleged April 2018 Student Loan Repayment Agreement with plaintiff, especially in light of the fact that the copy of the alleged 2018 Student Loan Repayment Agreement in the record before the court is not signed by any government official, the 2018 HR Pre-Approval Document contains only a single digital signature by FCI Bennettsville Warden Travis Bragg (as opposed to the three digital signatures that appear on the 2019 HR Approval Document), the approval box on the final page of the 2018 HR Pre-Approval Document is unchecked, the box next to the "amount approved" on the 2018 HR Pre-Approval Document is blank, and defendant made no student loan repayments on plaintiff's behalf in 2018, as should have been the case if a contract between defendant and plaintiff had come into existence in 2018.

_____

[19] At oral argument on defendant's motion to dismiss, defendant stated: "[P]rogram statements are typically available online just from bop.gov. A search of this specific one [referring to Program Statement 3530.02] is currently being reviewed pursuant to the Executive Order on personnel and things like that. So it is not currently publicly available . . . ." (alterations and omission added).

**CONCLUSION**

For the reasons stated above, defendant's motion to dismiss count one of plaintiff's complaint, plaintiff's breach of contract claim, for failure to state a claim is **GRANTED**. Moreover, as explained above, plaintiff's breach of contract claim, if valid, would be barred by the applicable six-year statute of limitations. Also, to the extent plaintiff tries to state a tort claim in count one, plaintiff's tort claim must be dismissed for lack of jurisdiction. Count two of plaintiff's complaint, plaintiff's quantum meruit claim, is **DISMISSED** for failure to state a claim upon which relief can be granted. Plaintiff's request for leave to amend plaintiff's complaint is **DENIED.** Plaintiff's complaint is **DISMISSED.** The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**